THIS OPINION IS CITABLE
AS PRECEDENT OF THE
TTAB

Mailed:
Nov. 14, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**

―――――

**Trademark Trial and Appeal Board**

―――――

Truescents LLC
v.
Ride Skin Care, L.L.C.

―――――

Opposition No. 91158556
to application Serial No. 76485733
filed on January 27, 2003

―――――

Matthew J. Booth of Matthew J. Booth & Associates PLLC for
Truescents LLC.

Joseph R. Meaney of Ellis & Venable PC for Ride Skin Care,
L.L.C.

―――――

Before Hohein, Grendel and Zervas, Administrative Trademark
Judges.

Opinion by Grendel, Administrative Trademark Judge:


**INTRODUCTION**

Ride Skin Care, L.L.C., applicant herein, seeks

registration on the Principal Register of the mark depicted

below



for goods identified in the application as "non-medicated skin care products namely sunscreen, skin cleansers, skin moisturizers, pre-moistened cosmetic wipes and lip balms." Applicant has disclaimed GENUINE SKIN CARE apart from the mark as shown. The application is based on intent-to-use under Trademark Act Section 1(b), 15 U.S.C. §1051(b).

Truescents LLC, opposer herein, has opposed registration of applicant's mark. As grounds for opposition, opposer alleges that it is the owner of a family of **GENUINE** marks for skin soaps, liquid soaps, and lotions for hands, face, hair and body, and that applicant's mark, as applied to applicant's goods, so resembles opposer's family of marks, and each of the marks, as to be likely to cause confusion, to cause mistake, or to deceive. Trademark Act Section 2(d), 15 U.S.C. §1052(d). Specifically, as established by the parties' January 27, 2005 stipulation, opposer is the owner of the following five pending applications and extant registrations:

1. Registration No. 2809406, issued January 27, 2004, which is of the mark **GENUINE BODY** (in

2

standard character form; BODY disclaimed) for "skin soaps, toilet soaps, liquid soaps for hands, face, and body; skin lotion, hand lotion, body lotion, after-shave lotion; non-medicated bath salts; facial scrubs, body scrubs, and foaming scrubs for the face and body; facial concealer, facial cleanser, facial cream, facial emulsion, facial lotion, facial makeup, facial mousse; and bath oils."

2. Registration No. 2809407, issued January 27, 2004, which is of the mark **GENUINE SPA** (in standard character form; SPA disclaimed) for the same goods.

3. Application Serial No. 78137766, filed June 21, 2002, seeking registration of the mark **GENUINE SKIN** (in standard character form; SKIN disclaimed) for the same goods. Review of the Office's automated records indicates that a Statement of Use was accepted for this application on October 4, 2006, and issuance of a registration is pending.

4. Application Serial No. 78137825, filed June 21, 2002, seeking registration of the mark **GENUINE FACE** (in standard character form; FACE disclaimed) for the same goods. Review of the Office's automated records indicates that a Statement of Use was accepted for this application on September 20, 2006, and issuance of a registration is pending.

5. Application Serial No. 78306960, filed September 29, 2003, seeking registration of the mark **GENUINE HAIR** (in standard character form; HAIR disclaimed) for "hair care products, namely, shampoo, conditioner, hair gel, hair cleaning preparations, non-medicated hair care preparations, hair mousse, hair pomades, hair spray, hair bleach and bleaching preparations, hair care preparations, hair color and color removers; hair dye, hair emollients, hair frosts, hair gel, hair lighteners, hair lotions, hair mascara, hair relaxing preparations, hair removing cream, hair straightening preparations, hair styling preparations, and hair waving lotion." Review of the Office's automated records indicates that a fourth extension of time to file a

> Statement of Use for this application was granted on September 21, 2006.

During trial, each party submitted a notice of reliance on various documentary materials, and each party submitted affidavit or declaration testimony pursuant to stipulation under Trademark Rule 2.123(b).  The case is fully briefed.

**EVIDENTIARY ISSUES**

Initially, we resolve two evidentiary issues.  First, in Paragraph 4 of its notice of reliance, applicant requests that we take judicial notice "that hundreds and hundreds of graphical marks incorporate the word 'genuine.'" Corresponding Exhibit D to the notice of reliance is a printout from the Office's TESS database, consisting of a listing of 424 applications and registrations by serial number/registration number, mark and status.  Second, in Paragraph 8 of its notice of reliance, applicant requests that we take judicial notice that opposer has filed seventy-one applications for registration of various marks over the last four years.  Corresponding Exhibit G to the notice of reliance is a printout from the Office's TESS database listing opposer's applications and registrations by serial number/registration number, mark, and status.

Opposer, in its brief, has objected to these two requests for judicial notice made by applicant, arguing that the facts asserted are not the type of facts which may be

4

judicially noticed.  Applicant, in its brief, contests opposer's objections.

The Board does not take judicial notice of registration records located in the Office, and such registrations may not be made of record simply by submitting a listing of them.  *See* TBMP §704.03(b)(1)(B).  Accordingly, we have given no consideration to the factual assertions made by applicant in Paragraphs 4 and 8 of its notice of reliance, nor to the listings of registrations contained in Exhibits D and G to the notice of reliance.

**STANDING**

Because the parties have stipulated to the status and title of opposer's pleaded registrations and applications, and because opposer's likelihood of confusion claim is not frivolous, we find that opposer has established its standing to oppose registration of applicant's mark.  *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

**SECTION 2(d) GROUND OF OPPOSITION**

To prevail on its Section 2(d) ground of opposition, opposer must prove (a) either its ownership of its pleaded registrations and/or its priority of use of its applied-for

5

marks, and (b) that a likelihood of confusion exists. Before we reach these issues, however, two preliminary matters require discussion, i.e., opposer's "family of marks" claim, and applicant's "fair use" defense.

**Opposer's "family of marks" claim**

Opposer claims that it owns a family of GENUINE marks, and that a likelihood of confusion exists between applicant's mark and such family of opposer's marks. In support of its claim, opposer asserts that two of its marks (GENUINE BODY and GENUINE SPA) are in use, with total sales under such marks of over $3 million and 460,000 units, and advertising expenditures of $126,000. Opposer also asserts that it is developing products and markets for its other three GENUINE marks, GENUINE SKIN, GENUINE FACE and GENUINE HAIR.

Our primary reviewing court has stated:

> A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner. Simply using a series of similar marks does not of itself establish the existence of a family. There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods. ... Recognition of the family is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family. It is thus necessary to consider the use, advertisement, and

6

distinctiveness of the marks, including assessment of the contribution of the common feature to the recognition of the marks as of common origin.

*J & J Snack Foods Corp. v. McDonald's Corp*., 932 F.2d 1460, 18 USPQ2d 1889, 1891-92 (Fed. Cir. 1991) [citations omitted]. The Board has held:

In order to establish a "family of marks," it must be demonstrated that the marks asserted to comprise its "family" or a number of them have been used and advertised in promotional material or used in everyday sales activities in such a manner as to create common exposure and thereafter recognition of common ownership based upon a feature common to each mark.

*American Standard, Inc. v. Scott & Fetzer Co*., 200 USPQ 457, 461 (TTAB 1978). The Board similarly has held that, to establish a family of marks:

[I]t must be shown by competent evidence, first, that … the marks containing the claimed "family" feature, or at least a substantial number of them, were used and promoted together ... in such a manner as to create public recognition coupled with an association of common origin predicated on the "family" feature; and second, that the "family" feature is distinctive (i.e., not descriptive or highly suggestive or so commonly used in the trade that it cannot function as a distinguishing feature of any party's mark).

*Land-O-Nod Co. v. Paulison*, 220 USPQ 61, 65-66 (TTAB 1983).

Applying these principles in the present case, we must reject opposer's claim of ownership of a family of GENUINE marks. Opposer has failed to present any evidence showing

that it has advertised and promoted its asserted GENUINE marks together as a family, and there is no evidence upon which we might base a finding that purchasers recognize GENUINE as the surname of a family of marks. Mere ownership of the various marks, or registrations thereof, does not suffice to establish a family of marks. *See J & J Snack Foods, supra; Consolidated Foods Corp. v. Sherwood Medical Industries, Inc.,* 177 USPQ 279 (TTAB 1973); *see generally* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §23:61 (4th ed. updated 2006).

Thus, we find that opposer has not established ownership of a family of GENUINE marks.[1] Our Section 2(d) priority and likelihood of confusion analyses, therefore, shall be based separately on each of opposer's pleaded marks.

**Applicant's "Fair Use" Defense**

At pages 7-8 and 22-25 of its brief, applicant argues that it uses the words GENUINE and SKIN only in their descriptive sense, and that such descriptive usage is "fair

---

[1] Given opposer's failure to prove that it has advertised and used its marks as a family, we need not reach the issue of whether the word GENUINE is sufficiently distinctive to serve as the surname for a family of marks in any event. *See, e.g., American Standard, Inc. v. Scott & Fetzer Co.,* 200 USPQ 457 (TTAB 1978)(no AQUA family of marks for water faucets); *Ft. Howard Paper Co. v. Nice-Pak Products, Inc.,* 127 USPQ 431 (TTAB 1960)(no NAP family of marks for napkins); *cf. Sports Authority Michigan*

use" which opposer should not be entitled to prevent. In support of this argument, applicant cites *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 [72 USPQ2d 1833] (2004).

Even if we assume that applicant properly pleaded "fair use" as an affirmative defense (and opposer disputes that point), we find that the defense is legally unavailable to applicant in this case. The "fair use" defense of Trademark Act §33(b)(4), 15 U.S.C. §1115(b)(4), is a defense available to a defendant in a federal action charging infringement of a registered mark, and it has no applicability in inter partes proceedings before the Board, which deal with the issue of registrability. *See Miles Laboratories Inc. v. Naturally Vitamin Supplements Inc.*, 1 USPQ2d 1445, 1454 (TTAB 1986). Moreover, even if the defense were legally available in this proceeding, applicant cannot rely on it. Applicant is not using the words GENUINE and SKIN merely in a non-trademark, descriptive manner, but instead has included those words as part of the mark it seeks to register. This is trademark use, not non-trademark fair use; applicant's disclaimer of the words apart from the mark as shown does not remove them from the mark. Accordingly,

---

*Inc. v. PC Authority Inc.*, 63 USPQ2d 1782 (TTAB 2002), appeal dismissed, 46 Fed. Appx. 962 (Fed. Cir. 2002).

we have given no consideration to applicant's arguments in support of a "fair use" defense, *qua* defense.[2]

**Section 2(d) priority**

Because the parties have stipulated to the status and title of opposer's pleaded registrations of the marks GENUINE BODY and GENUINE SPA, Section 2(d) priority is not an issue in this case as to those marks and the goods covered by those registrations. *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).

Because opposer has not yet obtained registrations of its other three pleaded marks, priority is at issue with respect to those marks. We find that the earliest date upon which applicant may rely for priority purposes is the filing date of its application, January 27, 2003. We find that the earliest dates upon which opposer may rely for priority purposes as to its non-registered marks are the application filing dates for those marks. The GENUINE FACE and GENUINE SKIN applications were filed on June 21, 2002, a date prior to applicant's January 27, 2003 priority date. Subject to issuance of those registrations, we find that opposer has

---

[2] However, as discussed below, we have taken into consideration in our likelihood of confusion analysis applicant's argument that the word GENUINE in the parties' marks is weak and entitled to only a narrow scope of protection.

priority with respect to those marks and the goods identified in those applications. However, opposer's GENUINE HAIR application was filed on September 23, 2003, subsequent to applicant's January 27, 2003 priority date. Accordingly, opposer cannot establish priority as to its GENUINE HAIR mark, and its Section 2(d) claim as to that mark must fail.

Thus, the marks upon which opposer is entitled to rely for its Section 2(d) ground of opposition in this case are its marks GENUINE BODY, GENUINE SPA, GENUINE SKIN and GENUINE FACE. As noted above, however, these marks do not comprise a family of marks, so we shall make our likelihood of confusion determination as to each mark, separately. We shall begin with opposer's GENUINE SKIN mark, because that is the mark upon which opposer has based essentially all of its likelihood of confusion arguments, and because it is the mark, of opposer's four marks at issue, which on its face arguably resembles applicant's mark most closely.

**Likelihood of Confusion**

Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue (the *du Pont* factors). *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA

1973).  *See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

We turn first to the second and third *du Pont* factors, i.e., the similarity or dissimilarity of the respective goods, and the similarity or dissimilarity of the trade channels for the goods.  It is settled that it is not necessary that the respective goods be identical or even competitive in order to support a finding of likelihood of confusion.  That is, the issue is not whether consumers would confuse the goods themselves, but rather whether they would be confused as to the source of the goods.  It is sufficient that the goods be related in some manner, or that the circumstances surrounding their use be such that they would be likely to be encountered by the same persons in situations that would give rise, because of the marks used thereon, to a mistaken belief that they originate from or are in some way associated with the same source or that there is an association or connection between the sources of the respective goods.  *See In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Melville Corp.*, 18 USPQ2d 1386 (TTAB 1991); and *In re*

12

*International Telephone & Telegraph Corp.*, 197 USPQ 910 (TTAB 1978).

Applicant's goods are identified in the application as "non-medicated skin care products namely sunscreen, skin cleansers, skin moisturizers, pre-moistened cosmetic wipes and lip balms." Opposer's goods, as identified in its GENUINE SKIN application, are "skin soaps, toilet soaps, liquid soaps for hands, face, and body; skin lotion, hand lotion, body lotion, after-shave lotion; non-medicated bath salts; facial scrubs, body scrubs, and foaming scrubs for the face and body; facial concealer, facial cleanser, facial cream, facial emulsion, facial lotion, facial makeup, facial mousse; and bath oils."

We find that applicant's goods, as identified in the application, are legally identical to certain of opposer's goods (applicant's skin cleansers and moisturizers versus opposer's facial cleansers, skin soaps and lotions), and otherwise are closely related personal care products. Applicant has presented no argument to the contrary, but argues instead that the goods are unrelated because the parties are or will be marketing their respective goods in different trade channels and to different classes of purchasers. Specifically, applicant argues that its products are marketed to purchasers in the "motorcycle

market," and not in the mass market retail trade channels in which opposer markets its products.

Applicant's argument is unavailing. Neither applicant's nor opposer's identification of goods is limited in any way as to trade channels or purchasers, and we therefore must presume that the identified goods are marketed in all normal trade channels for such goods and to all normal classes of purchasers for such goods. *In re Elbaum*, 211 USPQ 639 (TTAB 1981). Any evidence as to the differences in the parties' current or anticipated <u>actual</u> trade channels is irrelevant to our determination under the second and third *du Pont* factors. *See Miles Laboratories Inc. v. Naturally Vitamin Supplements Inc., supra*, 1 USPQ2d at 1450, and cases cited therein.

Thus, we find that the second and third *du Pont* factors weigh in opposer's favor in our likelihood of confusion analysis.

We turn next to the first *du Pont* factor, which requires us to determine the similarity or dissimilarity of the marks when viewed in their entireties in terms of appearance, sound, connotation and overall commercial impression. *Palm Bay Imports, Inc., supra*. The test, under the first *du Pont* factor, is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in

14

terms of their overall commercial impression that confusion as to the source of the goods offered under the respective marks is likely to result. The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975). Furthermore, although the marks at issue must be considered in their entireties, it is well-settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. *See In re Chatam International Inc.,* 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004); *In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985). Finally, in cases such as this, where the applicant's goods are identical to the opposer's goods, the degree of similarity between the marks which is required to support a finding of likelihood of confusion is less than it would be if the goods were not identical. *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698 (Fed. Cir. 1992).

Opposer's mark is **GENUINE SKIN**, in standard character form. Applicant's mark is the design mark depicted below.



Opposer argues that the marks are similar because applicant's mark encompasses opposer's GENUINE SKIN mark in its entirety, and because both marks are dominated by the word GENUINE, which appears as the first word in each of the marks. The design elements of applicant's mark, according to opposer, are merely an "incidental neutral backdrop" for the words and do not suffice to distinguish the marks. Opposer argues that the two marks have virtually identical meanings, in that "each seeks to emphasize to the consumer that the product sold under the mark is a 'genuine' skin care product." (Opposer's brief at 12.)

Applicant, in turn, argues that the dominant feature of its mark is the word RIDE, due to its size and prominence in the display of the mark. Indeed, applicant argues, the words GENUINE SKIN CARE in applicant's mark are "effectively transparent" to the viewer. Applicant further argues that the word GENUINE which is common to both marks is so laudatory and descriptive that its presence in both marks is an insufficient basis on which to find that the marks are

confusingly similar in their entireties.  In support of this last contention, applicant has submitted printouts from the Office's TARR and TESS databases of forty-six third-party registrations and applications of design marks which include the word GENUINE, and which cover a wide variety of goods and services.  We note that in most of these applications and registrations the term GENUINE is disclaimed.

In its reply brief, opposer argues that applicant essentially is requesting that we ignore the presence of the word GENUINE in applicant's mark.  Opposer notes that GENUINE is not disclaimed in any of opposer's registrations and applications, and argues that its presence in both parties' marks makes the marks similar.

Considering the parties' arguments and the evidence of record, we find as follows under the first *du Pont* factor. First, we find that the dominant feature in the commercial impression created by applicant's mark must be deemed to be the word RIDE.  This word appears in lettering which is many times larger than the lettering in which the other wording appears, and it is prominently and centrally placed in the mark.  Moreover, the word RIDE appears to be wholly arbitrary as applied to the identified goods.  Although we do not ignore the words GENUINE SKIN CARE and we cannot adopt applicant's contention that these words would be "effectively transparent" to purchasers, we find nonetheless

17

that they contribute relatively less to the source-indicating significance of the mark. It is the prominently-displayed and arbitrary word RIDE, not the descriptive words GENUINE SKIN CARE, which is most likely to be viewed and used by purchasers as the primary source indicating feature in applicant's mark. We therefore accord greater weight to RIDE in our comparison of the marks. *See In Re Chatam International, Inc., supra,* and *In re National Data Corp., supra.*

Second, we find that the dominant feature of opposer's GENUINE SKIN mark is the word GENUINE, but that is only because the word SKIN is generic or descriptive and essentially without source-indicating significance. Even if GENUINE is the dominant feature of opposer's mark, we find that it is inherently a weak, laudatory term which is entitled only to the narrowest scope of protection. In this regard, we take judicial notice that "genuine" is defined, in pertinent part, as "Actually possessing the alleged or apparent attribute or character: *genuine leather*," and as "Not spurious or counterfeit; authentic." The American Heritage Dictionary of the English Language (4th ed. 2000).[3] This essentially laudatory meaning and significance of

---

[3] The Board may take judicial notice of dictionary definitions. *See University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

GENUINE is corroborated by the forty-six third-party registrations made of record by applicant, in which the word GENUINE appears and is disclaimed in marks for a wide variety of goods and services. *See, e.g., Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693 (CCPA 1976); *Sports Authority Michigan Inc. v. PC Authority Inc.*, *supra*; McCarthy, *supra*, at §11:90.

Taking into account the relative strength of the components of the respective marks, all the while viewing the marks in their entireties as we must, we find them to be dissimilar rather than similar, for the following reasons.

In terms of appearance, we find that the design element of applicant's mark, as well as the large print in which the word RIDE appears, result in a mark which is visually readily distinguishable from opposer's mark. The only visual overlap between the marks is the presence in each mark of the laudatory word GENUINE and the generic or descriptive word SKIN, and even with respect to these two words, applicant's mark looks different from opposer's mark because the two words are separated by the prominently-displayed word RIDE.

Likewise in terms of sound, the words GENUINE and SKIN would be spoken in both marks, but in applicant's mark they are separated by the word RIDE. The word RIDE does not appear and would not be spoken in opposer's mark, and this

point of aural dissimilarity outweighs any similarity resulting from the marks' common use of GENUINE and SKIN.

In terms of connotation, we find the marks to be quite different. Opposer's mark GENUINE SKIN, taken literally, would mean "authentic skin" as opposed to, presumably, inauthentic or counterfeit skin. That is, the word GENUINE modifies the word SKIN. See the "genuine leather" example given in the dictionary definition quoted above. In applicant's mark, the word GENUINE modifies the words SKIN CARE, not just the word SKIN, giving applicant's and opposer's marks different meanings to that extent. More importantly, the presence of the word RIDE as the dominant feature in applicant's mark gives applicant's mark a meaning which simply does not exist in opposer's mark.

In terms of overall commercial impression, we find again that the marks are quite dissimilar, due to the presence of the dominant word RIDE in applicant's mark. The commercial impression of applicant's mark is that of RIDE-brand genuine skin care products. No such commercial impression is created by opposer's GENUINE SKIN mark.

Comparing the marks in their entireties, we cannot agree with opposer's contention that the presence of the word GENUINE in both marks suffices to make the marks similar. Instead, we find that any similarity between the marks which results from the presence of that laudatory and

weak word in both marks is greatly outweighed by the obvious dissimilarities between the marks, most importantly the presence of the arbitrary word RIDE in applicant's mark and the absence of that word from opposer's mark. Purchasers will readily look to the RIDE portion of applicant's mark as a means of distinguishing between the sources of applicant's and opposer's products. They are not likely to assume the existence of a source connection merely because of the presence of the laudatory word GENUINE in both marks. *Cf. Knight Textile Corp. v. Jones Investment Co.*, 75 USPQ2d 1313 (TTAB 2005)(NORTON-MCNAUGHTON ESSENTIALS not confusingly similar to ESSENTIALS).

For these reasons, we find that the marks are dissimilar rather than similar, and that the first *du Pont* factor weighs in applicant's favor.

Viewing all of the evidence of record as it pertains to the *du Pont* evidentiary factors, we conclude that there is no likelihood of confusion between opposer's GENUINE SKIN mark and applicant's mark, even if those marks were to be used on the identical and closely-related goods involved herein. Simply put, the dissimilarity between the marks is dispositive in this case. *See, e.g., Kellogg Co. v. Pack-Em Enterprises Inc.*, 14 USPQ2d 1545 (TTAB 1989), *aff'd*, 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991). Therefore, we

21

dismiss the opposition as to opposer's pleaded GENUINE SKIN mark.

We also find no likelihood of confusion as to the other three marks upon which opposer's Section 2(d) claim is based, i.e., GENUINE BODY, GENUINE SPA, and GENUINE FACE.[4] Applicant's goods, as identified in the application, are identical and/or related to opposer's goods, as discussed above. However, we find that each of these other marks of opposer's is even less similar to applicant's mark than is the GENUINE SKIN mark which we have already found to be dissimilar, rather than similar, to applicant's mark. The only point of similarity between applicant's mark and each of these marks of opposer's is the presence of the laudatory and weak word GENUINE. That point of similarity is not sufficient to overcome the basic dissimilarity between the marks which results from the dominating presence of the arbitrary word RIDE in applicant's mark. This is so, notwithstanding the identical and related nature of the goods. Again, the dissimilarity of the marks is dispositive in each case. *See Kellogg Co. v. Pack-Em Enterprises Inc., supra.*

In summary, we find that opposer does not have a family of marks upon which to base its Section 2(d) claim, and that

---

[4] As noted above, opposer's Section 2(d) claim as to its GENUINE HAIR mark must fail due to lack of priority.

there is no likelihood of confusion between applicant's mark and any of the four marks as to which opposer has priority or owns a registration.  Opposer's Section 2(d) ground of opposition therefore fails.

Decision:  The opposition is dismissed.