INTERNATIONAL DIAGNOSTIC TECHNOLOGY, INC., Appellant/Cross-Appellee,

v.

MILES LABORATORIES, INC., Appellee/Cross-Appellant.

Appeal Nos. 84–746, 84–859. Opposition No. 60,467.

United States Court of Appeals, Federal Circuit.

Oct. 15, 1984.

Karl A. Limbach, San Francisco, Cal., argued for appellant/cross-appellee.

Raymond I. Geraldson, Jr., Chicago, Ill., argued for appellee/cross-appellant. With him on the brief were Craig S. Fochler, John Bostjancich, Chicago, Ill., and Melvyn A. Silver, San Jose, Cal., of counsel.

Before MARKEY, Chief Judge, SKELTON, Senior Circuit Judge, and MILLER, Circuit Judge.

JACK R. MILLER, Circuit Judge.

These are consolidated appeals from the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("board"), opinion reported at 220 USPQ 438 (TTAB 1983). In Docket No. 84,746, International Diagnostic Technology, Inc. ("International") contests the board's decision sustaining the opposition of Miles Laboratories, Inc. ("Miles") and its holding that International's mark STIQ, for "immuno-assay equipment for medical laboratories, namely, a sampler to be used in conjunction with test tubes," so resembles the marks of Miles, consisting of the letters STIX as the suffix of a number of marks, all previously used or registered for medical laboratory tests and/or equipment, as to be likely to cause confusion when applied to International's goods.

In Docket No. 84–859, Miles contests the board's decision sustaining International's counterclaim to cancel Miles' registration of STIX alone for "chemical test for analysis of body fluids," registration No. 1,047,918, dated September 14, 1976. The board based its decision on its holding that Miles' own application to register STIX alone was void *ab initio*, being "an attempt to reserve a mark for the future." [1]

We affirm the board's decision on the likelihood of confusion issue, vacate its decision sustaining the counterclaim to cancel on the basis that Miles' own application was void *ab initio*, and remand for further findings and reconsideration of its holding that said application was void *ab initio*.

---

1. In an amended answer to Miles' opposition, International asserted that Miles was guilty of unclean hands and was estopped to oppose its registration because Miles filed an application to register the STIX mark alone to obtain a registration of a mark more similar to International's mark STIQ after obtaining confidential information about International's intent to market a stick-like product. International also asserted that Miles was guilty of fraud because, at the time of filing its own application, it had made no bona fide commercial use of the mark sufficient to support the application; that Miles never sold any goods under the mark; and that Miles had abandoned the mark by failing to sell any goods or services under the mark for over three years preceding the date of the amended answer. All of which Miles denied. The board found no "clear and convincing evidence" of fraud and no proof that Miles' employees had been told about the STIQ trademark when some of International's officers had visited Miles' plant in Indiana. The board observed that, at the time International decided to use its STIQ mark (application filed April 21, 1976, claiming use since April 6, 1976), Miles had already established a family of STIX suffixed marks and had been considering using the mark STIX alone. We agree with the board's treatment of these issues. Moreover, since the board decided that Miles' own application was void *ab initio,* there was no need to consider the abandonment issue.

## Background

All of Miles' marks have been used in connection with reagent strips at its Ames division, which makes diagnostic products, including reagent strips and instruments with which the strips are used. The strips, to which reagent pads are applied, are used in the analysis of body fluids, including blood and urine, to screen, diagnose, and monitor various diseases, and the board found that Miles had, prior to International's adoption of its mark STIQ, developed a family of marks ending in the suffix STIX which the purchasing public and users associate with these strips. It appears that the mark STIX was considered by Miles for use in connection with several of Miles' products: a reagent strip for urinalysis which tested for nine different chemical components or characteristics in urine, eventually sold under the mark N–MUL-TISTIX–C; a reagent strip which included a test for specific gravity, eventually sold under the mark N–MULTISTIX SG; a control strip to test the accuracy of some of Miles' other strips, eventually sold under the mark CHEKSTIX; and a reagent strip which tested for ascorbic acid in urine, eventually sold as C–STIX. The reagent strip (Ascorbate II) on which the mark STIX was eventually used is an improved version of the C–STIX strip. Although development of Ascorbate II commenced in 1975, it was not marketed until the last quarter of 1979. The application for registration of the mark STIX alone was filed March 1, 1976, with claimed use since December 8, 1975.

Miles' goods are sold to hospitals, both civilian and military, private and commercial laboratories, group practices, solo practitioners, and public health departments, and are used by laboratory technicians, clinical chemists, and doctors.

International markets a line of diagnostic reagent tests and instruments (fluorometers) that "read" the tests by measuring the amount of fluorescence produced by a chemical reaction that occurs on the end of a "sampler" which bears the mark STIQ. The samplers are a component of a kit which forms an immuno-assay system to diagnose and monitor the treatment of a number of diseases by identifying antibodies in body fluids, primarily blood. International's goods are sold to many of the same ultimate purchasers as are Miles' goods, including clinical laboratories in major health centers, large hospitals, private commercial laboratories, military medical facilities, and public health departments.

## Likelihood of Confusion Issue

Comparing International's mark to Miles' family of marks, the board found that the marks are "closely similar in sound, appearance and connotation." It also found that, although the goods of the parties are different, their similarities "are striking"; that both constitute chemical laboratory diagnostic reagent equipment designed to be used with a diagnostic instrument; that both are relatively easy to use; that the products of both parties comprise a family of diagnostic tests; that both may be used as complementary tests for the same disease of the same patient; that the parties have advertised their products in some of the same medical journals and have promoted their products at some of the same medical conventions. The board added that the evidence demonstrates "the renown of opposer's [Miles'] line of –STIX products acquired over many years of use and through sales in the hundreds of millions of dollars" and that Miles "has also spent millions of dollars in advertising its product through various media." Accordingly, it concluded that International's mark, used in connection with samplers employed with its diagnostic equipment, so resembles Miles' –STIX family of marks for Miles' diagnostic reagent strips that confusion is likely, because purchasers and users are likely to believe that International's products are another line of Miles' medical laboratory products. We agree.[2]

2. International argues that this court should, under the doctrine of comity, give weight to decisions of foreign tribunals, such as Great Britain, France, and West Germany, where its

### Validity of Application Issue

 The board quoted testimony of record showing that the strips sent with the application to establish trademark usage of STIX alone could have been any of the strips that were currently in inventory. "It is clear," the board said, "that the product that was eventually marketed under the mark STIX (the improved ascorbic acid test) was not available for marketing at the time of the intial [*sic*] shipment on December 8, 1975." It referred to evidence "that opposer [Miles] had not determined at the time the labels were printed what the *specific nature* of the reagent product would be" (emphasis added), and found that "the product which opposer [Miles] shipped bearing the mark STIX on December 8, 1975, was not the product which eventually came into being." Accordingly, it held that—

> since the mark STIX per se was not used on the goods in question until long after the filing date, ... the application to register the mark was void ab initio.

Unfortunately, the basis for the board's holding appears to be that the goods in Miles' token shipments [3] were not identical to the product eventually marketed under the STIX mark, viz. Ascorbate II, which Miles' manager of new business development for urine chemistry products stated "was in development at that point, or at least in conceptual development." In its opinion of even date in *Ralston Purina Co. v. On-Cor Frozen Foods, Inc.,* 746 F.2d 801 (Fed.Cir.1984), this court has effectively held that, considering the realities of the marketplace, the "identical goods" test is invalid where the "inherent and identifiable character" of a product under development which is intended to be marketed under the mark in question has not been changed from that of the product used in a token shipment, as described in the application.

However, although it appears that the "inherent and identifiable character" test has been satisfied here, the board's findings on Miles' developmental activities (and the intent they may or may not support) are so sparse that the board's decision sustaining International's counterclaim to cancel Miles' registration must be vacated and the case remanded for further findings by the board and reconsideration of its holding in light of this opinion.

AFFIRMED IN PART; VACATED; REMANDED IN PART.

---

mark has been registered, and Sweden, where its registration was upheld on inter partes appeal and likelihood of confusion was an issue. However, we believe that this argument properly belongs before the Congress.

**3.** The board quoted cross-examination and testimony of Miles' manager (of the Ames division) which indicates that there were three initial shipments of bottles of reagent strips with STIX on the labels on the bottles.