PAULINE NEWMAN, Circuit Judge.
 

 J & J Snack Foods Corporation (J & J) appeals the decision of the United States Trademark Trial and Appeal Board denying registration of the trademarks McPRET-ZEL and McDUGAL McPRETZEL for frozen soft pretzels. The Board held that there was likelihood of confusion with a family of marks owned by McDonald’s Corporation (McDonald’s). We affirm.
 

 BACKGROUND
 

 J & J sells frozen soft pretzels in bulk to food service retailers, such as snack bars and at amusement parks and stadiums. In 1984 J & J began to market a smaller soft pretzel, primarily to schools, in association with the trademarks McDUGAL McPRET-ZEL and McPRETZEL. These marks are illustrated in the applications for registration as follows:
 

 [[Image here]]
 

 In the applications the goods are described as frozen soft pretzels.
 

 McDonald’s opposed the registration of these marks, on the ground that their use by J & J is likely to cause confusion or mistake or to deceive the public. McDonald’s relied on its promotion and use of a family of marks wherein the “Me” formative is combined with a generic name, including the marks McDONUT for doughnuts, McPIZZA for a pizza product, and McMUPFIN, McCHICKEN and McRIB for sandwich-type products, all used in commerce before J & J’s use of McPRETZEL and McDUGAL McPRETZEL.
 

 J & J states that its marks are not confusingly similar to any single mark registered or used by McDonald’s, that McDonald’s is not entitled to all “Me” marks for all purposes, that there are many “Me” marks in use and registered by others than
 
 *1458
 
 McDonald’s, and that McDonald’s does not use or own “Me” by itself as a trademark. Thus J & J argues that McDonald’s asserted family of marks should be limited to those specific marks that are actually used by McDonald’s.
 

 The Board found that by extensive promotion and use McDonald’s has created public recognition of a family of marks wherein “Me” is combined with the generic name of a food product, and that the public has come to associate such marks with McDonald’s. On the ground that the public is likely to view McPRETZEL and McDU-GAL McPRETZEL soft pretzels as of this family, and thus be confused as to the origin of the goods, registration was denied.
 

 DISCUSSION
 

 Section 2(d) of the Lanham Trademark Act, 15 U.S.C. § 1052(d), provides that a trademark shall not be refused registration unless,
 
 inter alia, it:
 

 Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....
 

 The likelihood of confusion, mistake, or deception is determined by assessing the appropriate evidentiary factors, including the similarity or dissimilarity of the marks; the similarity or dissimilarity of the goods as described in the application, compared with the goods with which the prior mark is associated; the respective channels of trade; the conditions of sale and the intended customers; the extent and nature of advertising and promotion; the fame of the prior mark; the number and nature of similar marks in use on similar goods; and any evidence of actual confusion or the absence thereof.
 
 See G.H. Mumm & Cie v. Desnoes & Geddes, Ltd.,
 
 917 F.2d 1292, 1295, 16 USPQ2d 1635, 1637-38 (Fed.Cir.1990);
 
 In re E.I. du Pont de Nemours & Co.,
 
 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973).
 

 Explaining his selection of the McPRETZEL and McDUGAL McPRETZEL marks, the president of J & J, Gerald Schreiber, described family outings to Philadelphia 76ers basketball games, where the stadium announcer would pronounce the name of the 76ers’ star forward George McGinnis with a distinctive accent on the “Me” in his name, to the delight of the crowd. Mr. Schreiber stated that the name “McDugal” became the nickname of Schreiber’s son Lindsey, who called Schreiber “McDad.” Whether there is evidence of intent to trade on the goodwill of another is a factor to be considered, but the absence of such evidence does not avoid a ruling of likelihood of confusion.
 
 See Bandag, Inc. v. Al Bolser’s Tire Stores, Inc.,
 
 750 F.2d 903, 915, 223 USPQ 982, 990 (Fed.Cir.1984).
 

 The Board placed controlling weight on McDonald’s use of a number of similar marks on food products, specifically, marks composed of the formative prefix “Me” and a generic food name; on McDonald’s extensive promotion of this family of marks; and on the recognition and fame of this family of marks as associated with McDonald’s.
 

 A familv of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner. Simply using a series of similar marks does not of itself establish the existence of a family. There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods. For example, in
 
 AMF, Inc. v. American Leisure Products, Inc.,
 
 474 F.2d 1403, 1406, 177 USPQ 268, 270 (CCPA 1973) the court held that AMF had established a family of marks of “fish” names for sailboats, based on advertising, use, and distinctiveness of the names. In
 
 Motorola, Inc. v. Griffiths Electronics, Inc.,
 
 317 F.2d 397, 399, 137 USPQ 551, 553, 50 C.C.P.A. 1518 (CCPA 1963) it was held that the use and advertisement of the marks
 
 *1459
 
 GOLDEN VOICE, GOLDEN BEAM, GOLDEN VIEW, and several other “golden” marks, together with the primary mark MOTOROLA, established a pattern of use and recognition of a family of marks in which “golden” is a dominant feature. In
 
 International Diagnostics Technology, Inc. v. Miles Laboratories, Inc.,
 
 746 F.2d 798, 800, 223 USPQ 977, 978 (Fed.Cir.1984) this court observed that millions of dollars in advertising contributed to recognition of the family of STIX marks.
 

 Recognition of the family is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family. It is thus necessary to consider the use, advertisement, and distinctiveness of the marks, including assessment of the contribution of the common feature to the recognition of the marks as of common origin. McDonald’s showed extensive usage and promotion of various marks using the “Me” formative, in association with the MCDONALD’S mark, in advertising and at McDonald’s restaurants. McDonald’s showed that in 1987 it operated 7,600 outlets in the United States with sales of over $14 billion; that it engaged in extensive nationwide advertising, spending $405 million in 1987; that its current menu is diverse; and that two of its restaurants have sold pretzels.
 

 J & J does not challenge the renown of the individual marks, but argues that a trademark owner must own trademark rights to the formative itself, in order to establish rights to a family based on that formative. J & J points out that the “Me” mark, standing alone, is registered by McCormick & Company for use with spices. However, it is not correct that the formative itself must be a trademark in order to sustain a family of marks. In
 
 Colony Foods, Inc. v. Sagemark, Ltd.,
 
 735 F.2d 1336, 222 USPQ 185 (Fed.Cir.1984), the court held that Colony Foods had not established a pattern of use sufficient to support public recognition of a family of restaurant marks incorporating the word “hobo”, although Colony Foods had more than one such mark.
 
 Id.
 
 at 1339, 222 USPQ at 186-87. While the court pointed out that Colony Foods did not have trademark rights in “hobo”
 
 per se,
 
 the court did not hold that Colony Foods could not have a family of “hobo” marks unless it did.
 

 J & J refers to the large number of “Me” marks not registered to McDonald’s, and argues that the existence of these marks is inconsistent with McDonald’s claim to a family of marks. Third party registrations of various “Me” names does not defeat McDonald’s specific family of marks wherein the prefix “Me” is used with generic food names to create fanciful words.
 
 See Motorola,
 
 317 F.2d at 400, 137 USPQ at 553 (“As a matter of logic it would seem to us that if opposer has a family of six marks all starting with the [same] word ..., it still has that family notwithstanding there may be some others using the same word”).
 

 Responding to J & J’s argument that there would not be customer confusion because it sells its pretzels frozen and in bulk at the wholesale level, the Board found that the pretzels would reach the consuming public in a fast-food, ready-to-eat manner, and that J & J's registration applications as well as its marketing plans were not limited to sales only at wholesale and only in schools. Determination of reg-istrability is made on the basis of the description of the goods in the application.
 
 Octocom Systems, Inc. v. Houston Computer Services, Inc.,
 
 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed.Cir.1990).
 

 The protective provisions of the Lanham Act benefit not only the business community but the consuming public, and it is from the perspective of the consumer that likelihood of confusion is determined.
 
 See Massey Junior College, Inc. v. Fashion Institute of Technology,
 
 492 F.2d 1399, 1403, 181 USPQ 272, 274 (CCPA 1974). While evidence of actual confusion is not necessary to a finding of likelihood of confusion, McDonald’s presented consumer survey evidence in which 30% of the respondents stated that they thought a product marked McPRETZEL originated with McDonald’s. Although we agree with J & J that the survey was not perfect in its
 
 *1460
 
 content and execution, it is admissible and given appropriate weight.
 
 See Coca-Cola Co. v. Essential Products Co.,
 
 421 F.2d 1374, 1376, 164 USPQ 628, 630 (CCPA 1970).
 

 In determining whether J & J’s use of McPRETZEL and McDUGAL McPRETZEL is likely to cause confusion or mistake or to deceive as to the source of the pretzels, preference is accorded the prior user of a mark or family of marks, as against a newcomer. The newcomer has the clear opportunity, if not the obligation, to avoid confusion with well-known marks of others.
 
 Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.,
 
 748 F.2d 669, 676, 223 USPQ 1281, 1285 (Fed.Cir.1984);
 
 Planters Nuts & Chocolate Co. v. Crown Nut Co.,
 
 305 F.2d 916, 924-25, 134 USPQ 504, 511 (CCPA 1962). Although J & J argues that the criteria relied on by the Board do not apply with the same weight to McDUGAL McPRETZEL, as compared with McPRETZEL alone, we share the Board’s reasoning that the ordinary purchaser is likely to be confused as to the source of the pretzels in either case.
 

 AFFIRMED.