THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

al/apb                        Mailed:  January 3, 2007

                              Opposition No. **91167237**
                              Opposition No. **91167238**
                              Opposition No. **91167252**
                              Opposition NO. **91168647**

                              Venture Out Properties LLC

                                      v.

                              Wynn Resorts Holdings, LLC
                              (as consolidated)


Before Quinn, Rogers and Cataldo,
Administrative Trademark Judges

By the Board:


    Wynn Resorts Holdings LLC ("applicant") seeks to

register the mark CABANA BAR & CASINO in standard character

form[1] and in the following stylized form[2] for "casino

services in International Class 41:

---

[1] Applicant's mark is the subject of application Serial No.
76597834, filed June 15, 2004, which is based on an assertion of
a bona fide intent to use the mark in commerce under Trademark
Act Section 1(b), 15 U.S.C. 1051(b).
[2] Applicant's mark is the subject of application Serial No.
78475098, filed August 27, 2004, which is based on an assertion
of a bona fide intent to use the mark in commerce under Trademark
Act Section 1(b), 15 U.S.C. 1051(b).

**CABANA**
BAR & CASINO

In Opposition Nos. 91167252 and 91167237, Venture Out Properties LLC ("opposer") has opposed registration of these marks on the grounds of likelihood of confusion and dilution with its pleaded mark CABANA, used for "hotel services."[3]

Applicant also seeks to register the mark CABANA BAR in standard character form[4] and the mark CABANA BAR & CASINO in, again, the following stylized form[5] for "restaurant, bar and cocktail lounge services" in International Class 43:

---

[3] Opposer's pleaded mark is also the subject of application Serial No. 76630391, filed February 7, 2006, asserting May 1999 as the date of first use and the date of first use in commerce. On September 7, 2006, the USPTO issued a non-final action in opposer's application notifying opposer that registration may be refused in view of, *inter alia*, the four pending involved applications of applicant. On March 29, 2006, the USPTO issued a notice of suspension wherein further action on opposer's application was suspended pending disposition of, *inter alia*, applicant's four involved applications.

[4] Applicant's mark is the subject of application Serial No. 76597835, filed June 15, 2004, which is based on an assertion of a bona fide intent to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. 1051(b).

[5] Applicant's mark is the subject of application Serial No. 78475092, filed August 27, 2004, which is based on an assertion of a bona fide intent to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. 1051(b).

CABANA
BAR & CASINO

In Opposition Nos. 91168647 and 91167238, opposer has filed notices of opposition to registration of these marks on the grounds of likelihood of confusion and dilution with its same pleaded mark CABANA for "hotel services."[6]

In each of the above-referenced proceedings, applicant denied the salient allegations of the notice of opposition in its answer.

We, sua sponte, hereby order the consolidation of the above-referenced proceedings inasmuch as the parties are the same and the proceedings involve common questions of law or fact.[7]  In view thereof, Opposition Nos. 91167237, 91167238, 91167252, and 91168647 are hereby consolidated.

The Board file will be maintained in Opposition No. 91167237 as the "parent" case.  As a general rule, from this point on, should additional papers or motions be filed, only

---

[6] See fn. 2, *supra*.
[7] When cases involving common questions of law or fact are pending before the Board, the Board may order the consolidation of the cases.  See Fed. R. Civ. P. 42(a); see also, *Regatta Sport Ltd. v. Telux-Pioneer Inc.,* 20 USPQ2d 1154 (TTAB 1991) and *Estate of Biro v. Bic Corp.*, 18 USPQ2d 1382 (TTAB 1991).

a single copy should be filed; but that copy should bear all four proceeding numbers in its caption.

We now consider opposer's motions (filed July 17, 2006) for summary judgment in each of the proceedings. The motions have been fully briefed.

Opposer seeks summary judgment in its favor on the grounds of priority of use and likelihood of confusion with its pleaded mark. Specifically, opposer argues that (through its predecessor-in-interest) it first used its CABANA mark at least as early as May 1999; that such date precedes both applicant's asserted first use of its involved marks on April 28, 2005, when applicant's hotel property first opened, and the filing dates of each subject application; that the dominant portion of each of applicant's marks is identical to opposer's mark; that "it is beyond dispute" that casino services and restaurant, bar, and cocktail lounge services are related to hotel services; and no material issue of fact, therefore, is left for trial inasmuch as a likelihood of confusion exists under Section 2(d) of the Trademark Act.

As evidentiary support for each of its motions, opposer has submitted: (1) copies of advertisements from the classified section of both the May 25, 1999 issue and the August 12, 1999 issue of the Bay Area Reporter advertising opposer's hotel services under its CABANA mark; (2) copies

of applicant's involved applications[8]; (3) a copy of applicant's Objections and Responses to Opposer's First Set of Interrogatories dated January 31, 2006; (4) a copy of the September 7, 2005 Office Action issued by the USPTO in opposer's application Serial No. 76630391; (5) a copy of the Notice of Suspension issued by the USPTO on March 28, 2006 in that application; (6) a copy of Applicant's Response to Opposer's First Set of Requests for Admissions dated January 27, 2006; (7) copies of several third-party registrations for marks used in connection with both hotel services and casino services and/or hotel services and restaurant, bar, and lounge services; (8) a copy of applicant's application Serial No. 78679036 for the mark WYNN used in connection with "casino services" in International Class 41 and "resort hotel, restaurant, bar and lounge services" in International Class 43; (9) a declaration of G. Lee Fitzgerald, manager of opposer, with related exhibits; and (10) a declaration of Martin E. Hsia, counsel for opposer, with related exhibits for opposer.

In response to the motion, applicant asserts that although opposer's hotel allegedly opened before the opening of applicant's establishment, the parties' marks are used for different services and such services do not overlap;

---

[8] Applicant's involved applications are automatically of record pursuant to Trademark Rule 2.122(b)(1) and need not be introduced again.

that applicant does not use its mark for hotel services; that priority of use of its CABANA marks at issue can clearly be established for casino, restaurant, bar, and cocktail lounge services since none of these services is offered by opposer under its pleaded mark as evidenced by opposer's advertisements for its hotel, and by the fact that gambling is illegal in Hawaii where opposer's hotel is located; and that no likelihood of confusion exists. Applicant further argues that its use of the elements BAR and BAR & CASINO in its respective marks distinguishes its CABANA marks from opposer's mark inasmuch as differences in sight, sound, connotation, and commercial impression are apparent; that opposer's submission of third-party registrations for "a few famous Las Vegas hotels" exhibiting marks used in connection with both hotel services and casino services and/or hotel services and restaurant, bar, and lounge services is irrelevant because the majority of hotels across the country do not market casino, restaurant, bar, and cocktail lounge services under the same mark as hotel services; that the trade channels used by both parties are significantly different because applicant only uses its involved marks to advertise, market, and promote its casino, restaurant, bar, and cocktail lounge services to guests already staying at its resort hotel rather than the general public, whereas opposer uses its mark to attract "guests to

a small, uniquely themed specialty hotel in Hawaii" which is "gay owned and operated"; that concurrent use of the marks at issue is unlikely to confuse consumers who are not likely to make impulsive decisions when planning their vacations and booking hotel accommodations; that CABANA is essentially a weak mark as exhibited by applicant's "cursory search of the USPTO's official website" which shows "over 100 live registrations and applications for marks incorporating the term CABANA for a variety of goods and services;" that opposer has neither alleged nor provided evidence demonstrating actual confusion amongst the relevant consuming public; that consumer confusion is unlikely given the fact that both parties limit use of their marks to their respective discrete classes of services, rather than a variety or large number of diverse products; and that any potential confusion between the marks at issue is *de minimis* because "the marks are marketed to different consumers, in different markets, through different means, and for different goods and services."

As evidentiary support for its position applicant has submitted: (1) a declaration of Kevin Tourek, Senior Vice President and General Counsel of applicant; (2) a copy of each of applicant's involved applications; (3) photographs exhibiting use of applicant's involved marks at its resort; (4) a website excerpt for opposer's Cabana at Waikiki Hotel;

and (5) a declaration of Lauri Thompson, applicant's counsel.

In its reply brief, opposer asserts that applicant's applications are not limited in terms of channels of trade or geography and that because the involved services are described broadly, applicant's marks must be assumed to be used in connection with services available to all classes of purchasers and to be marketed in all channels of trade, including to prospective purchasers of opposer's hotel services. Opposer further argues that applicant's reliance on opposer's printed advertisements, its allegations that opposer only markets its services to the gay community, and its contention that applicant only advertises its own services to guests staying at its hotel, fail to raise any genuine issues of material fact because such assertions are irrelevant to the Board's determination of likelihood of confusion. Additionally, with regard to applicant's contention that the marks are different because of descriptive or generic terms in applicant's marks, opposer argues that there appears to be no dispute regarding the dominance of the term CABANA in applicant's marks, and the descriptive or generic elements of applicant's marks do not cure the confusion that is otherwise created by the common dominant term.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. See Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), and *Sweats Fashions Inc. v. Pannill Knitting Co. Inc.*, 4 USPQ2d 1793 (Fed. Cir. 1987). When the moving party's motion is supported by evidence sufficient to indicate that there is no genuine issue of material fact, and that the moving party is entitled to judgment, the burden shifts to the nonmoving party to demonstrate the existence of specific genuinely-disputed facts that must be resolved at trial.

The nonmoving party may not rest on the mere allegations of its pleadings and assertions of counsel, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine issue of material fact for trial. In general, to establish the existence of disputed facts requiring trial, the nonmoving party "must point to an evidentiary conflict created on the record at least by a counterstatement of facts set forth in detail in an affidavit by a knowledgeable affiant." *Octocom Systems Inc. v. Houston Computer Services Inc.*, 16 USPQ2d

1783, 1786 (Fed. Cir. 1990), *citing Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 221 USPQ 561, 564 (Fed. Cir. 1984). A dispute as to a material fact is genuine only if a reasonable fact finder viewing the entire record could resolve the dispute in favor of the nonmoving party. See *Olde Tyme Foods Inc. v. Roundy's Inc.*, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it would have the burden of proof at trial, judgment as a matter of law may be entered in favor of the moving party. See Fed. R. Civ. P. 56(c), *Celotex Corp.*, 477 U.S. at 322-323. Finally, in deciding a motion for summary judgment, the Board must view the evidence in the light most favorable to the nonmovant, and must draw all reasonable inferences from underlying facts in favor of the nonmovant. Id.

Based on the record now before us and for the reasons discussed below, we conclude that summary judgment is appropriate in this case because opposer has established that there are no genuine issues of material fact remaining for trial with regard to its claims of priority of use and likelihood of confusion, and that it is entitled to a judgment on these issues pursuant to Section 2(d) of the Trademark Act.

As a threshold matter, we find that the evidence of opposer's use of the mark CABANA is sufficient to establish opposer's standing in this case. No genuine issue of material fact exists on this issue.

We turn next to the issue of priority and find that opposer's date of first use of its mark CABANA is May 1999 as shown by the advertisements for its hotel demonstrating such use and the declaration of G. Lee Fitzgerald attesting to such first use and continuing use. Applicant's date of first use of each of the four involved marks, as established in its responses to opposer's discovery requests, is April 28, 2005, the opening date of the Wynn Las Vegas Hotel. Inasmuch as such date is obviously subsequent to the May 1999 date of first use proven by opposer, opposer has established that it has priority of use herein.[9] Further, applicant does not dispute that opposer first used its mark in May 1999.

We next consider the issue of likelihood of confusion and, as with any case in which such issue arises, we analyze whether there exists a likelihood of confusion under the thirteen factors set forth in *In re E.I. du Pont de Nemours & Co.*, 177 USPQ 563, 567 (CCPA 1973). See also *In re*

---

[9] Moreover, opposer's proven date of first use is prior to the earliest dates upon which applicant can rely for priority purposes, i.e., its application filing dates. See Section 7(c) of the Trademark Act.

*Majestic Distilling Co.*, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003); and *Recot Inc. v. M.C. Becton*, 54 USPQ2d 1894, 1896 (Fed. Cir. 2000). However, while we have considered each factor for which we have evidence, we focus our analysis herein on the relevant *du Pont* factors in this proceeding, namely, the appearance of the marks, the related nature of the services, and the similarity of trade channels. *Han Beauty, Inc. v. Alberto-Culver Co.,* 57 USPQ2d 1557, 1559-1560 (Fed. Cir. 2001).

To determine whether the marks are similar for purposes of assessing the likelihood of confusion, we must consider the appearance, sound, connotation and commercial impression of each mark. *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,* 73 USPQ2d 1689, 1692 (Fed. Cir. 2005). In a particular case, any one of these bases for comparison may be critical in finding marks to be similar. In addition, it is a well-established principle that, in articulating reasons for reaching a conclusion on the issue of likelihood of confusion, while the marks are compared in their entireties, including descriptive or disclaimed portions thereof, "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties. Indeed, this type of analysis appears to

12

be unavoidable." *In re National Data Corp.,* 224 USPQ 749, 751 (Fed. Cir. 1985).

Opposer's mark is CABANA and applicant's involved marks share and stress the term CABANA. This term is the first element in each of applicant's involved marks. See *Presto Prods., Inc. v. Nice-Pak Prods., Inc.,* 9 USPQ 1895 (TTAB 1988). In applicant's stylized mark, CABANA is stressed by virtue of its larger size and bolder presentation. *In re Appetito Provisions Co. Inc.,* 3 USPQ2d 1553, 1554 (TTAB 1987). The additional elements which make up applicant's marks, namely CASINO and BAR & CASINO, are disclaimed terms. Although we do not disregard these terms, disclaimed matter is often "less significant in creating the mark's commercial impression." *In re Code Consultants, Inc.,* 60 USPQ2d 1699, 1702 (TTAB 2001). In this instance, the terms CASINO and BAR & CASINO are generic for applicant's casino and cocktail lounge services, respectively, and accordingly have little commercial significance. See *In re Chatam International Inc.*, 71 USPQ2d 1944, 1946 (Fed. Cir. 2004) ("Because ALE has nominal commercial significance, the Board properly accorded the term less weight in assessing the similarity of the marks under Du Pont. As a generic term, ALE simply delineates a class of goods"). See also *In re Dixie Restaurants,* 41 USPQ2d 1531, 1534 (Fed. Cir. 1997) (Federal Circuit held that, despite the addition of the words "The"

13

and "Cafe" and a diamond-shaped design to registrant's DELTA mark, there was a likelihood of confusion).

We conclude that the term CABANA is clearly the dominant term in each of the involved marks. In addition, the marks are similar in sound and appearance to the extent that they begin with the identical dominant term CABANA. While the elements CASINO and BAR & CASINO appear in applicant's marks and do not appear in opposer's, the addition of these generic terms for the respective services offered under each mark does not serve to significantly distinguish the marks overall, particularly if the services themselves are related. Furthermore, the meaning and commercial impression of the marks are, likewise, similar. Here, the use of the term CABANA suggests, for both opposer's and applicant's involved services, that the services are offered at a beach or swimming pool and evoke the feelings of relaxation and enjoyment generally associated with such locations.[10]

Next, we consider whether the services of opposer and applicant are related. Applicant's services are casino,

---

[10] We take judicial notice of the relevant definition of "cabana" as meaning "a shelter on a beach or at a swimming pool used as a bathhouse." *The American Heritage Dictionary of the English Language* (3rd ed. 1992). The Board may take judicial notice of dictionary definitions. See *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.,* 213 USPQ 594 (TTAB 1982), aff'd, 217 USPQ 505 (Fed. Cir. 1983).

restaurant, bar, and cocktail lounge services.  Opposer's services are hotel services.

> In order to find that there is a likelihood of confusion, it is not necessary that the goods or services on or in connection with which the marks are used be identical or even competitive. It is enough if there is a relationship between them such that persons encountering them under their respective marks are likely to assume that they originate at the same source or that there is some association between their sources.

*McDonald's Corp. v. McKinley,* 13 USPQ2d 1895, 1898 (TTAB 1989).  See also *In re Opus One, Inc.,* 60 USPQ2d 1812, 1814-15 (TTAB 2001).

There is no genuine issue that the services are closely related.  The evidence of record establishes that there is a relationship between opposer's hotel services and applicant's services as set forth in each involved application, such that a reasonable consumer, when viewing the marks, would be confused as to the source or sponsorship of the services.  These services may be offered under the same mark as illustrated by the third-party registrations which issued based on use of such marks in commerce:

> U.S. Registration No. 907693 for the mark CAESARS PALACE for "hotels and restaurant services" in International Class 42.

15

U.S. Registration No. 1851743 for the mark 4 QUEENS for "casino services" in International Class 41 and for "hotel services" in International Class 42.

U.S. Registration No. 2015176 for the mark FLAMINGO PLAYERS CLUB for "casino services" in International Class 41 and for "hotel services" in International Class 42.

U.S. Registration No. 2121189 for the mark TAJ MAHAL for "casino services" in International Class 41 and for "hotel services" in International Class 42.

U.S. Registration No. 2771155 for a design mark for, *inter alia*, "casino services; entertainment services in the nature of live performances by singers, comedians, dancers, and musical groups" in International Class 41 and for "resort hotel, restaurant, bar and lounge services" in International Class 43.

U.S. Registration No. 2789028 for the mark HARD ROCK CASINO for "conducting entertainment, exhibitions in the nature of live music, music festivals and casino services" in International Class 41 and for "restaurant, bar and take-out food services and hotel services" in International Class 42.

U.S. Registration No. 2843123 for the mark HARRAHS and design for "casino entertainment services" in International Class 41 and for "hotel and restaurant services" in International Class 43.

U.S. Registration No. 3021734 for the mark CAESARS ENTERTAINMENT for, *inter alia*, "casino services" in International Class 41 and "resort hotel, bar, and restaurant services; providing convention services" in International Class 43.

U.S. Registration No. 3034766 for GLORY OF ROME for, inter alia, "casinos" in International Class 41 and for "resort, hotel, bar, restaurant and cocktail lounge services; providing convention facilities;

16

> providing banquet facilities for special
> occasions" in International Class 43.

Additionally, we note applicant's unrelated application Serial No. 78679036 for the mark WYNN[11] for, *inter alia*, "casino services" in International Class 41 and for "resort hotel, restaurant, bar and lounge services" in International Class 43.

Thus, the numerous third-party registrations and applicant's unrelated application for the mark WYNN suggest that the services involved herein, namely, opposer's hotel services and applicant's casino services, restaurant, bar, and cocktail lounge services, are of a type that may emanate from a single source in connection with the same mark. *See In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1786 (TTAB 1993); *In re Mucky Duck Mustard Co. Inc.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988).

Applicant argues that opposer's evidence is irrelevant and insufficient to show the absence of a genuine issue as to whether the parties' respective services are related. However, in stark contrast to opposer's submission of evidence, applicant did not provide any evidence to show, or designate specific portions of the record to show, that there is a genuine factual issue as to whether the respective services are related. In view of the extensive

---

[11] Filed July 26, 2005, asserting April 28, 2005 as a date of first use and first use in commerce.

evidence provided by opposer, applicant's unsupported argument is unpersuasive. See *Octocom*, 16 USPQ2d at 1786 (Court determined that applicant's argument was "without evidentiary foundation" and "no more than [applicant's] disagreement with the board's ultimate conclusion on the likelihood-of-confusion issue"). It is clear that opposer's "hotel services" are highly similar to the services identified in all four of applicant's subject applications, in that hotel guests often dine in restaurants and drink in bars and lounges during their travels, as well as engage in recreational activities, such as gambling in casinos. Moreover, we note that in the past the Board has found hotel and restaurant services to be related such that purchasers would ascribe a common origin to them when rendered under similar marks. The Board has found that it is common for hotels to have restaurants as part of their package of services and that hotel chains have evolved from what were initially restaurant businesses only. See *In re The Summit Hotel Corporation,* 220 USPQ 927 (TTAB 1983) (restaurants and hotels offer complementary services to the same general class of consumers) and *Bonaventure Associates v. Westin Hotel Co.,* 218 USPQ 537 (TTAB 1983)(restaurant services are an integral part of hotel services). See also *In re Dixie Restaurants Inc.,* 41 USPQ2d at 1534 (likelihood of confusion

18

between THE DELTA CAFÉ and design for restaurant services and DELTA for hotel, motel and restaurant services).

Accordingly, we find that the parties' services are related.

We next consider whether the channels of trade of the respective services are different. Applicant, as earlier noted, argues that there is a genuine issue of material fact as to whether the channels of trade of the respective services are different because its casino, restaurant, bar, and cocktail lounge services are marketed only to guests already staying at its resort hotel, whereas opposer's hotel services are marketed to guests interested in staying at a small, "gay owned and operated" resort in Hawaii. Even if these contentions are accepted as true, applicant's argument is not well taken. It is well settled that the determination of whether there is a likelihood of confusion must be based on the goods and services as they are identified in applicant's opposed applications. *Octocom*, 16 USPQ2d at 1787. See also *J & J Snack Foods Corp. v. McDonald's Corp.*, 18 USPQ2d 1889, 1882 (Fed. Cir. 1991); and *Canadian Imperial Bank of Commerce, N.A. v. Wells Fargo Bank,* 1 USPQ2d 1813 (Fed. Cir. 1987). Where there is no limitation on the channels of trade in the recitation of services in any of the subject applications, as in this proceeding, it is presumed that the recitations encompass

all services of the type described, that they move in all normal channels of trade, and that they are available to all potential customers. *Paula Payne Products Co. v. Johnson Publishing Co.,* 177 USPQ 76 (CCPA 1973); *Kalart Co. v. Camera-Mart, Inc.*, 119 USPQ 139 (CCPA 1958); *In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981). For these reasons, applicant's contention in its brief in opposition to the motion for summary judgment that the channels of trade for its goods will be limited is insufficient to raise a genuine issue of material fact. Fed. R. Civ. P. 56(e). See *Octocom*, 16 USPQ2d at 1786 ("the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which sales of the goods are directed"). Given the unrestricted recitation of services in the opposed applications and lack of evidence from applicant to contradict the evidence provided by opposer, there is no basis for the Board to find that a genuine issue of material fact exists as to channels of trade. Because the services are clearly related, they would be offered in the same channels of trade and offered to the same classes of consumers, namely, the general public.

Upon careful consideration of the pleadings, the parties' arguments, the evidence submitted by opposer, and the absence of any contravening evidence from applicant, and drawing all justifiable inferences in favor of applicant as the nonmoving party, we find that no genuine issue of material fact remains for trial with regard to opposer's standing and the claims of priority of use and likelihood of confusion, that opposer has established that there is a likelihood of confusion between its mark and applicant's marks, and that opposer is entitled to judgment as a matter of law as to these claims.

Accordingly, opposer's motion for summary judgment in all four proceedings is GRANTED. The oppositions are sustained on opposer's claim under Section 2(d) of the Trademark Act.

In view of our decision finding a likelihood of confusion, we need not reach the issue of dilution. See *American Paging Inc. v. American Mobilphone Inc.,* 13 USPQ2d 2036, 2039-40 (TTAB 1989), *aff'd without opinion,* 17 USPQ2d 1726 (Fed. Cir. 1990).