Goodman

THIS OPINION IS A
PRECEDENT OF
THE T.T.A.B

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

Mailed:  August 28, 2007

Opposition No. **91168875**

Apple Computer

v.

TVNET.net, Inc.

Before Quinn, Rogers and Cataldo, Administrative Trademark Judges.

By the Board:

TVNET.net, Inc. has filed an application to register the mark VTUNES.NET in standard character form for "digital music video internet downloads for entertainment purposes" in International Class 9.[1]  As grounds for the opposition, opposer alleges that applicant's mark, if used on the identified goods, would so resemble opposer's registered ITUNES[2] mark for "computer software for use in authoring, downloading, transmitting, receiving, editing, extracting, encoding, decoding, playing, storing and organizing audio data" in International Class 9 and opposer's registered ITUNES MUSIC STORE marks for a wide range of services including the following:  "retail store services in the

---

[1] Application Serial No. 78586859, filed March 14, 2005 asserting intent to use the mark under Section 1(b) of the Trademark Act.
[2] Reg. No. 2653465, issued November 26, 2002, Section 2(f) claimed.

field of entertainment, namely, musical and audiovisual works and related merchandise, provided via the internet and other computer and electronic communication networks" in International Class 35[3]; "telecommunication services, namely, electronic transmission of streamed and downloadable audio and video files via computer and other communications networks" in International Class 38[4]; "providing on-line facilities, via a global computer network, to enable users to program audio, video, text and other multimedia content" in International Class 41, and "providing temporary use of on-line non-downloadable software to enable users to program audio, video, text and other multimedia content" in International Class 42[5], as to be likely to cause confusion, mistake or to deceive. Opposer has also pleaded a claim of dilution of its ITUNES and ITUNES MUSIC STORE marks.

In its answer, applicant denies the salient allegations in the notice of opposition.

This case now comes up on opposer's motion, filed January 16, 2007, for summary judgment on the ground of likelihood of confusion. In support of its motion, opposer relies on, among other things, applicant's timely served

---

[3] Reg. No. 2828093, issued March 30, 2004; "Music Store" disclaimed and Section 2(f) claimed as to "Itunes."
[4] Reg. No. 3048602, issued January 24, 2006, "Music Store" disclaimed and Section 2(f) claimed as to "Itunes."
[5] Reg. No. 2993227, issued September 6, 2005; "Music Store" disclaimed.

responses to opposer's requests for admissions.  The motion is fully briefed, and in our discretion, we have considered opposer's reply brief.

A party is entitled to summary judgment when it has demonstrated that there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In reviewing a motion for summary judgment, the evidentiary record and all reasonable inferences to be drawn from the undisputed facts must be viewed in the light most favorable to the nonmoving party. *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992).

The facts set out below are not in dispute.  Some have been admitted by applicant in response to opposer's requests for admissions [listed below as "Response, request to admit no. __"].  Others have been conceded either in applicant's responses to opposer's interrogatories [listed below as "Response, interrogatory no. __"] or in its brief in response to the motion for summary judgment [listed below as ["Response brief, p. __"]:

1.  VTUNES is the dominant part of applicant's VTUNES.NET mark.  (Response, request to admit no. 12).

2.  The letter "v" in applicant's mark stands for video and ".net" is the generic top level domain identifier

for the URL linked to applicant's website.
(Responses, requests to admit nos. 9 and 12).

3. The terms ITUNES and VTUNES differ by one letter and both parties' marks have "some similarities" in that the parties' marks contain the word "tunes." (Response, request to admit no. 11; Response brief, p. 6).

4. The parties' goods are competitive and both parties' goods/services are similar in that they both offer music video downloads. (Responses, requests to admit nos. 13 and 16; Response brief, p. 7).

5. Both parties use the internet as a channel of trade to market their services and opposer uses the internet to extensively market its services. (Responses, requests to admit nos. 20 and 21; Response brief, pp. 8 and 11; and Response, interrogatory no. 4).

6. Opposer's marks are famous. (Response, request to admit no. 22; Response, interrogatory no. 34).

In addition, the following facts asserted in opposer's declaration of Thomas R. La Perle have not been contested or disputed by applicant:

7. Opposer markets its services in more channels than applicant such as print and television advertising, and "spends tremendously more on marketing" than

applicant. (Response brief, pp. 8 and 11; La Perle, paragraphs 14, 15, 16, and 17).

8. The ITUNES MUSIC STORE online retail store allows users to "to browse, preview and download popular music through ITUNES software" and to "stream music videos by popular music artists". (La Perle, paragraph 9.)

9. On October 12, 2005, Apple released a new version of its ITUNES software that allows users to purchase and download over 2,000 music videos from the ITUNES MUSIC STORE retail store. (La Perle, paragraph 12.)

10. From October 23, 2001 to March 31, 2005, opposer sold fifteen million IPOD devices bundled with a copy of ITUNES software. (La Perle, paragraphs 6 and 7.)

11. In the fourth quarter of [the fiscal year ending] September 30, 2006, opposer sold 8,729,000 IPOD devices bundled with ITUNES software. (La Perle, paragraph 8.)

12. From April 2003 to Febrary 23, 2006, one billion songs were downloaded from the ITUNES MUSIC STORE using ITUNES software. (La Perle, paragraphs 9 and 13.)

13. Between October 12, 2005 and Febrary 23, 2006, more than 15 million videos were downloaded from the

ITUNES MUSIC STORE retail store using ITUNES software. (La Perle, paragraphs 11 and 13.)

14. "Apple has expended significant resources in advertising and promotion of its ITUNES products." (La Perle, paragraph 14.)

15. Opposer's marketing efforts are extensive and include the use of print, television, outdoor advertising and public relations. (La Perle, paragraphs 15, 16, 17 and 19.)

16. Viewership of opposer's ITUNES television advertisements are "in the billions." (La Perle, paragraph 15.)

17. Through extensive marketing efforts, opposer has been successful in "developing a loyal customer following and valuable brand identity" for its ITUNES mark. (La Perle, paragraph 14.)

18. The media has extensively covered ITUNES software and ITUNES MUSIC STORE services. (La Perle, paragraph 20.)

Opposer has submitted copies of its pleaded registrations, prepared by the USPTO, showing the current title to its registrations for its ITUNES and ITUNES MUSIC STORE marks and that such registrations are valid and subsisting. This proof, in addition to establishing that there are no genuine issues of material fact regarding

6

opposer's standing, removes the issue of priority from this case. See *King Candy Company v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974).

Accordingly, the focus of our analysis is whether there are any genuine issues of material fact in dispute as to opposer's claim of likelihood of confusion. Such analysis involves consideration of all of the undisputed facts in evidence that are relevant to the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). In this case, the most important factors are the fame of opposer's marks, the similarity of the marks, the similarity of the goods and services, and the similarity of the trade channels.

We turn first to the factor of fame, because, when present, evidence pertaining to this factor "plays a 'dominant role' in the process of balancing the *du Pont* factors." *Recot Inc. v. Becton,* 214 F.3d 1322, 54 USPQ2d 1894, 1897 (Fed. Cir. 2000); *see also Kenner Parker Toys Inc. v. Rose Art Industries, Inc.,* 963 F.2d 350, 22 USPQ2d 1453, 1456 (Fed. Cir. 1992).

Applicant has admitted the fame of opposer's marks in its discovery responses, and opposer has provided corroborating evidence of fame.[6] See undisputed fact nos.

---

[6] The fame or strength of a mark is determined by a variety of factors, including the length of time the mark has been in use, the volume of sales under the mark and the extent of advertising

6, 7, 10, 11, 12, 13, 14, 15, 16, 17 and 18. Based on applicant's admissions and opposer's corroborating evidence, there is no genuine issue of material fact that opposer's ITUNES and ITUNES MUSIC STORE marks are famous as used in connection with opposer's goods and services.

Turning next to the similarity of the marks, we must compare the marks in their entireties as to appearance, sound, connotation and commercial impression. *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005). Nevertheless, it is well settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. *In re National Data Corp*., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

Opposer's marks are ITUNES and ITUNES MUSIC STORES. We consider the dominant feature of opposer's ITUNES MUSIC STORE marks to be ITUNES. This term is entitled to greater weight in the likelihood of confusion analysis because the term MUSIC STORE is descriptive or generic and has been disclaimed by opposer. Applicant's mark is VTUNES.NET.

---

or promotion of the goods or services with which the mark is used. *Giant Food, Inc. v. Nation's Foodservice, Inc*., 710 F.2d 1565, 218 USPQ 390, 394 (Fed. Cir. 1983). Opposer has provided such evidence.

With regard to applicant's mark, as applicant has admitted, the dominant feature is the term VTUNES as the term ".net" is a generic top level domain name indicator. See undisputed fact nos. 1 and 2. See also *In re Martin Container Inc*., 65 USPQ2d 1058, 1060 (TTAB 2002) (top level domain indicator has no source indicating significance).

The dominant, distinctive portions of the parties' marks (ITUNES/VTUNES), differ by only one letter, namely, the substitution of the letter "v" at the beginning of applicant's mark for the letter "i" in opposer's marks. See also undisputed fact no. 3. Although applicant has argued that the presence of the letter "v" distinguishes its mark, such letter is insufficient to distinguish the dominant portions of the parties' marks. *Cf. Weiss Associates, Inc. v. HRL Associates*, 902 F.2d 1546, 14 USPQ2d 1840, 1841 (Fed. Cir. 1990) ("It is especially hard to distinguish between TMS and TMM when the marks only differ by the last letter"). Thus, the VTUNES portion of applicant's mark is nearly identical in appearance to opposer's ITUNES mark and is nearly identical to the dominant portion of opposer's ITUNES MUSIC STORE marks. Moreover, although applicant has also argued that the parties' marks are dissimilar due to the addition of ".net" in its mark, the similarities between the parties' marks are greater than the differences. *See In re Infinity Broadcasting Corp. of Dallas*, 60 USPQ2d 1214, 1217

(TTAB 2001) (Board found KYNG similar to KING-TV and KING FM, noting that TV and FM were descriptive or generic and had no source indicating value). When considered in their entireties, the involved marks engender sufficiently similar overall commercial impressions that confusion will be likely when the marks are used on the admittedly competitive goods involved in this case. Therefore, due to the similarities of the parties' marks as well as overall commercial impressions, we find no genuine issues of material fact that the marks are confusingly similar.

With respect to the relatedness of the parties' goods and services, it is undisputed that applicant's goods will compete with opposer's goods and services, that the parties' goods and services are similar, and that opposer's goods and services provided under its ITUNES and ITUNES MUSIC STORE marks include providing digital music video internet downloads. See undisputed fact nos. 4, 8 and 9. Despite these admissions and concessions, applicant argues that confusion is unlikely because "the services offered by both parties are not that similar in use or function" and because opposer's "use of iTunes also includes, music, audio books, podcasts, TV shows and games."

However, it is not necessary that the respective goods and services be identical or even competitive to support a finding of likelihood of confusion. It is sufficient that

10

the goods and services be related in some manner, or that the circumstances surrounding their use be such that they would be likely to be encountered by the same persons in situations that would give rise, because of the marks used thereon, to a mistaken belief that they originate from or are in some way associated with the same source or that there is an association or connection between the sources of the respective services. *See In re Martin's Famous Pastry Shoppe, Inc*., 748 F.2d 1565, 223 USPQ 1289, 1290 (Fed. Cir. 1984). Moreover, in the context of likelihood of confusion, it is sufficient if likelihood of confusion is found with respect to use of the mark on any item that comes within the description of goods in the application or registration. Tuxedo Monopoly *Inc. v. General Mills Fun Group,* 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981) (MONOPOLY on T-shirts, where application included "shirts," would be likely to cause confusion with plaintiff's mark on board game).

In this case, when we consider the respective identifications of goods and services in opposer's pleaded registrations and the involved application, there is no genuine issue that applicant's "digital music video internet downloads" are related to, encompassed within or identical to opposer's computer software used in connection with audio data, opposer's online downloadable software used in connection with audio and video data, opposer's online

11

retail store services in the field of musical and audiovisual works, opposer's telecommunication services that provide audio and video files, and opposer's services of providing on-line facilities with respect to audio and video content. Therefore, we find no genuine issue of material fact that the parties' goods or services are related, if not identical.

Turning next to the channels of trade, it is undisputed that both parties offer their goods and services over the internet to the general public. See undisputed fact no. 5. The fact that opposer also uses other media such as print and television advertising to market its services does not raise a genuine issue regarding the parties' channels of trade. *See Octocom Systems Inc. v. Houston Computers Services Inc.,* 918 F.2d 937, 16 USPQ2d 1783, 1788 (Fed. Cir. 1990). Therefore, we find there is no genuine issue of material fact that the parties' channels of trade are identical.

Applicant has also argued, in an effort to raise a genuine issue, that opposer has permitted many companies to use the prefix "i" in the names of various products that are used in connection with opposer's IPOD device and therefore, applicant should not be precluded from being able to use its VTUNES.NET mark. However, we find that use of the "i" prefix by others for products used in connection with

opposer's IPOD device is not relevant to the issue of likelihood of confusion between opposer's and applicant's respective marks and therefore, this does not create a genuine issue of material fact.

Lastly, applicant's arguments regarding the lack of actual confusion and its good faith adoption of its VTUNES.NET mark do not raise genuine issues of material fact that preclude entry of summary judgment. Evidence of actual confusion is not a prerequisite for finding likelihood of confusion. Also, even accepting as fact that applicant adopted its mark in good faith, this does not mean that confusion is less likely.[7]

In summary, we find that opposer has carried its burden of proof and that no genuine issues of material fact remain as to opposer's standing, priority, or the ground of likelihood of confusion. In view thereof, opposer's motion for summary judgment is granted, the opposition is sustained on the likelihood of confusion ground, and registration of applicant's mark is refused.

---

[7] While evidence of bad faith adoption typically will weigh against an applicant, good faith adoption typically does not aid an applicant attempting to establish no likelihood of confusion. *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 18 USPQ2d 1889, 1891 (Fed. Cir. 1991).

13