THIS OPINION IS
A PRECEDENT OF
THE T.T.A.B.

Mailed:  July 21, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Eveready Battery Company, Inc.
v.
Green Planet, Inc.

_____

Opposition No. 91180015
to application Serial No. 77055909

_____

Michael A. Kahn and Emma C. Harty of Bryan Cave LLP for Eveready Battery Co., Inc.

Robert J. Lauson of Lauson & Schewe LLP for Green Planet, Inc.

_____

Before Seeherman, Hairston and Cataldo,
Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

On December 2, 2006 applicant, Green Planet, Inc., filed the above-noted application to register in standard characters on the Principal Register the mark SLICK ULTRA PLUS, based upon its assertion of a bona fide intention to use the mark in commerce for the following goods, as amended:  "disposable razors," in International Class 8.

Registration has been opposed by Eveready Battery Company, Inc. ("opposer").  As grounds for opposition, opposer asserts that it is the owner of the following marks,

previously used and registered on the Principal Register by opposer and its predecessors in interest, for the following goods:

SCHICK

(in typed form) for "safety razors and appurtenances therefor - namely, safety razor blades, devices for inserting blades into razors, and razor blade dispensing devices" in International Class 8;[1]

SCHICK

(in typed form) for "razors and razor blades" in International Class 8;[2]

# Schick

for "razor blades, razors" in International Class 8;[3]

ULTRA GLIDE

(in standard characters) for "lubricating plastic and/or polymer comfort strips sold as an integral component of razors and razor blades" in International Class 8;[4]

COMFORT PLUS

(in standard characters) for razor blades, razors" in

---

[1] Registration No. 0788722 issued on April 27, 1965. Section 8 affidavit accepted; Section 15 affidavit acknowledged. Renewed.
[2] Registration No. 2881805 issued on September 7, 2004.
[3] Registration No. 3210869 issued on February 20, 2007.
[4] Registration No. 3053978 issued on January 31, 2006, and registered pursuant to the provisions of Section 2(f) of the Trademark Act.

2

International Class 8;[5] and

INTUITION PLUS

(in standard characters) for "razors, razor blades" in International Class 8.[6]

Opposer alleges that it has used its pleaded marks in connection with the above goods since prior to the filing date of applicant's intent-to-use application; and that applicant's mark, SLICK ULTRA PLUS, when used on applicant's goods so resembles opposer's SCHICK, ULTRA GLIDE, and COMFORT PLUS marks for its recited goods as to be likely to cause confusion, to cause mistake, or to deceive.[7] In addition, opposer argues that its SCHICK marks are famous; that its SCHICK marks became famous prior to the filing date of the involved application, and that registration of applicant's mark will dilute the distinctive quality of opposer's famous SCHICK marks.

Applicant's answer consists of a general denial of the allegations in the notice of opposition.

---

[5] Registration No. 3175533 issued on November 21, 2006.
[6] Registration No. 3240668 issued on May 8, 2007.
[7] In addition, opposer asserts that it has used and registered SCHICK ULTRA PLUS in several foreign countries in connection with razors. However, inasmuch as opposer further clarifies that it does not claim "any U.S. trademark right in these foreign registrations," (brief, p. 23) such use and registration of SCHICK ULTRA PLUS will be given no consideration in our determination herein.

**Accelerated Case Resolution (ACR)**

On December 5, 2008, the Board issued an order denying opposer's motion for summary judgment on its claim of priority and likelihood of confusion; granting applicant's motion to amend the identification of goods in its involved application from "razors" to "disposable razors;" and resetting trial dates, beginning with opposer's testimony period which was reset therein to close on February 27, 2009. In a February 9, 2009 telephone conference with the Board interlocutory attorney responsible for this case, counsel for both parties agreed to resolve the instant proceeding by way of Accelerated Case Resolution (ACR).

On February 11, 2009 the Board issued an interlocutory order granting the parties' request to resolve this case via ACR. Pursuant thereto, the parties agreed to forego trial and proceed directly to briefing of the case on its merits, based upon a schedule set forth in the order. The parties further stipulated to the following:

> Opposer's notice of opposition is amended to withdraw its Section 43(c) dilution claim;
>
> Opposer has priority of use for purposes of its claim under Section 2(d) of the Trademark Act;
>
> The parties may rely upon evidence previously submitted in support of their briefing of opposer's motion for summary judgment in lieu of trial evidence;
>
> The parties further may rely upon additional evidence submitted with their briefs on the merits of the case; and

4

Upon conclusion of the parties' briefing of the case, the Board will render a final decision on the merits in accordance with the evidentiary burden at trial, that is, by preponderance of the evidence.[8]

## The Record

By operation of Trademark Rule 2.122, 37 C.F.R. §2.122, the record in this case consists of the pleadings and the file of the involved application. In addition, pursuant to the parties' ACR stipulation opposer relies upon the declarations, with exhibits, of the following individuals submitted with its motion for summary judgment: Adel Mekhail, Vice-President of North American Marketing for Schick Manufacturing, Inc., a wholly-owned subsidiary of opposer; Rondi S. Changar, a Legal Assistant for the Intellectual Property Department for opposer; and Emma C. Harty, one of opposer's attorneys. Opposer further relies upon the supplemental declaration of Adel Mekhail, with an exhibit, submitted with its main brief on appeal.

Applicant relies upon the declarations, with exhibits, of the following individuals submitted with its response in opposition to opposer's motion for summary judgment: Robert

---

[8] As set out in the ACR provisions above, the parties' utilization of ACR has expedited determination of the issues under consideration herein. Additional information regarding ACR is available on the United States Patent and Trademark Office (USPTO) website at www.uspto.gov/web/offices/com/sol/notices/acrognoticerule.pdf

J. Lauson, one of its attorneys; Anil Malhi, its President; and Steve Allen, an employee of its counsel of record.

It is noted that opposer designated certain portions of the above evidence "confidential" and submitted such under seal. Accordingly, we will refer to this evidence in only a very general fashion, and will only discuss such sales and advertising expenditures that were set forth in the parties' briefs.

Opposer and applicant filed main briefs on the case, and opposer filed a reply brief.

### Opposer's Standing and Priority of Use

Because opposer has made its pleaded registrations of record, we find that opposer has established its standing to oppose registration of applicant's mark. See Cunningham v. Laser Golf Corp., 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); and Lipton Industries, Inc. v. Ralston Purina Co., 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

Further, and as noted above, the parties stipulated to opposer's priority of use.[9]

### Likelihood of Confusion

Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the facts in evidence

---

[9] We note in addition that because opposer's pleaded registrations are of record, Section 2(d) priority is not an issue in this case as to the marks therefor and goods and services covered thereby. See King Candy Co. v. Eunice King's Kitchen, Inc., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).

that are relevant to the factors bearing on the likelihood of confusion issue. See In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); In re Majestic Distilling Company, Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); and In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

Family of Marks

We begin by addressing opposer's contention in its brief that it "uses the SCHICK mark as the house brand for razors"[10] sold under numerous designations and that these marks form "collectively, the 'SCHICK Family marks.'"[11] To the extent that opposer is asserting that it has a family of marks, opposer did not plead this in its notice of opposition. Nonetheless, based on the testimony, as well as the fact that applicant addressed opposer's arguments directed toward its asserted family of marks in its brief, without objection, we find this issue was tried by the implied consent of the parties, and will consider opposer's arguments with regard thereto. See Fed. R. Civ. P. 15(b). Cf. Long John Silver's Inc. v. Lou Scharf Inc., 213 USPQ 263, 266 n.6 (TTAB 1992).

---

[10] Brief, p. 3.
[11] Id.

In this case, although opposer submitted its registrations of SCHICK and SCHICK formative marks, the evidence is insufficient to support a finding that "the pattern of usage of the common element is sufficient to be indicative of the origin of the family."  The Black & Decker Corp. v. Emerson Electric Co., 84 USPQ2d 1482, 1490 (TTAB 2007) citing J & J Snack Foods Corp. v. McDonald's Corp., 932 F.2d 1460, 18 USPQ2d 1889, 1891 (Fed. Cir. 1991).  Thus, the requisite showing of a family of marks has not been made.  The fact that opposer has used and registered several marks incorporating SCHICK is not in itself sufficient to establish the existence of a family of marks.  See J & J Snack Foods, 18 USPQ2d at 1891.  As stated by the Federal Circuit, "There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods."  Id. at 1891.  Accordingly, opposer must demonstrate that the marks asserted to comprise the family, or a number of them, have been used and advertised in promotional material or in everyday sales activities in such a manner as to create common exposure and thereafter recognition of common ownership based upon a feature common to each mark.  See Truescents LLC v. Ride Skin Care LLC, 81 USPQ2d 1334, 1337 (TTAB 2006) citing American Standard, Inc. v. Scott & Fetzer Co., 200 USPQ 457, 461 (TTAB 1978).

In the present case, opposer's evidence consists of examples of packaging of its razors and razor blade cartridges under the mark Schick with the additional wording/marks INTUITION PLUS, QUATTRO, XTREME3, QUATTRO POWER and SILK EFFECTS.[12]  This material may suggest that the public has been exposed to opposer's Schick mark as part of or in connection with the additional designations noted above.  However, opposer has failed to demonstrate that it advertises or promotes various SCHICK formative marks to the public in such a manner that creates exposure and recognition of common ownership thereof based upon the SCHICK feature of each mark.  See Truescents LLC, 81 USPQ2d at 1338.  As a result, we find that opposer has failed to prove that it has a family of SCHICK marks.

Therefore, we will determine the issue of likelihood of confusion based on the individual marks that are the subject of opposer's registrations.  In our analysis we will focus our discussion of the issue of likelihood of confusion on that pleaded registration of opposer's which is closest to the mark for which applicant is seeking registration for the most similar goods, namely, opposer's Registration No. 2881805 for the mark SCHICK in typed form for "razors and razor blades" in International Class 8.

---

[12] Mekhail Declaration, Exhibit 3.

The Goods

The goods identified in opposer's Registration No. 2881805 for its SCHICK mark are "razors and razor blades" in International Class 8. Applicant's goods under its SLICK ULTRA PLUS mark are identified as "disposable razors," in International Class 8. Thus, as identified, opposer's "razors" are presumed to include applicant's more narrowly identified "disposable razors." As a result, these goods are legally identical.

Further, opposer's "razor blades" are an integral part of "razors" and "disposable razors." We hereby take judicial notice of the following definition of razor blade: a thin sharp-edged piece of steel that can be fitted into a razor.[13] In accordance with the above definition, opposer's "razor blades" are a component part of razors, including applicant's "disposable razors" and thus are closely related thereto.

In view of the in part legally identical and in part closely related nature of opposer's and applicant's goods, this du Pont factor favors opposer.

---

[13] The American Heritage Dictionary of the English Language, 4th ed. (2009). The Board may take judicial notice of dictionary definitions. See University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

Channels of Trade, Classes of Purchasers, and
Conditions of Sale

As noted above, the parties' goods are identical in part and otherwise closely related, and there are no recited restrictions as to their channels of trade or classes of purchasers. When identical goods are recited in an application and registration with no limitations as to their channels of trade or classes of consumers, such channels of trade and classes of consumers must be considered to be legally identical. See Genesco Inc. v. Martz, 66 USPQ2d 1260, 1268 (TTAB 2003) ("Given the in-part identical and in-part related nature of the parties' goods, and the lack of any restrictions in the identifications thereof as to trade channels and purchasers, these clothing items could be offered and sold to the same classes of purchasers through the same channels of trade."); and In re Smith and Mehaffey, 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers.").

Further, applicant admits in its brief on appeal that "its disposable razor goods are in direct competition with the disposable razor goods of Opposer."[14] Applicant goes on to argue that its goods are sold "at a substantially

---

[14] Brief, p. 8.

different price point."[15]  However, there are no restrictions or limitations in the identification of either party's goods to support applicant's contention that they are priced differently.  "The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed."  Octocom Systems, Inc. v. Houston Computers Services Inc., 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990).  See also Paula Payne Products v. Johnson Publishing Co., 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973) ("Trademark cases involving the issue of likelihood of confusion must be decided on the basis of the respective descriptions of goods.")

We also note in that regard that the parties' goods are ordinary consumer items available at a relatively low cost. Generally, purchasers of casual, low cost ordinary consumer items exercise less care in their purchasing decisions and are more likely to be confused as to the source of the goods.  See Specialty Brands, Inc. v. Coffee Bean Distributors, Inc., 748 F.2d 669, 223 USPQ 1281 (Fed. Cir. 1984).  Thus, we are not persuaded by applicant's arguments

---

[15] Id.

12

regarding the assertedly substantial differences in price of the involved goods.

We find that, as a result of the foregoing, these du Pont factors also favor opposer.

Actual Confusion

Another du Pont factor discussed by the parties is the lack of instances of actual confusion. Applicant asserts that the absence of actual confusion suggests no likelihood of confusion. However, it is not necessary to show actual confusion in order to establish likelihood of confusion. See Weiss Associates Inc. v. HRL Associates Inc. 902 F.2d 1546, 223 USPQ 1025 (Fed. Cir. 1990). Moreover, applicant's evidence shows that it only sold approximately 15 thousand razors under its SLICK ULTRA PLUS mark during a six-month period in 2007, and ceased such sales after commencement of this opposition.[16] Thus, on the record before us there appears to have been little opportunity for confusion to occur. This du Pont factor is neutral.

Applicant's Good Faith Adoption of Its Involved Mark

Applicant argues that it adopted its SLICK ULTRA PLUS mark in good faith, with no intent to trade on opposer's marks. However, it is settled that while evidence of bad

---

[16] While the involved application was filed based upon applicant's assertion of its bona fide intent to use the SLICK ULTRA PLUS mark in commerce, applicant has indicated that it has used its mark. Mahli Declaration, p. 2, Exhibit K.

faith adoption typically will weigh against an applicant, good faith adoption typically does not aid an applicant attempting to establish no likelihood of confusion. See J & J Snack Foods Corp. v. McDonald's Corp., 18 USPQ2d at 1891. Thus, this du Pont factor also is neutral.

Fame of Opposer's SCHICK Mark

Prior to determining the similarity or dissimilarity of the parties' marks, we consider evidence of the fame of opposer's SCHICK mark. Fame of an opposer's mark or marks, if it exists, plays a "dominant role in the process of balancing the DuPont factors," Recot Inc. v. Becton, 214 F.3d 1322, 1327, 54 USPQ2d 1894, 1897 (Fed. Cir. 2000) and "[f]amous marks thus enjoy a wide latitude of legal protection." Id. This is true because famous marks are more likely to be remembered and associated in the public mind than a weaker mark, and are thus more attractive as targets for would-be copyists. Id. Indeed, "[a] strong mark … casts a long shadow which competitors must avoid." Kenner Parker Toys, Inc. v. Rose Art Industries, Inc., 963 F.2d 350, 353, 22 USPQ2d 1453, 1456 (fed. Cir. 1992). A famous mark is one "with extensive public recognition and renown." Id.

Upon careful review of the record in this case, we are persuaded that opposer's SCHICK mark is famous. Opposer and its predecessors in interest have used the SCHICK mark

14

continuously since 1926 in connection with razors.[17] Opposer's razors and razor blades are sold throughout the United States in retail stores, grocery stores, drugstores, convenience stores and warehouse club stores.[18] From 2000 to 2008, opposer has sold over $2 billion of its razors and razor blades.[19] During that same time period, opposer's sales of disposable razors alone were over $100 million annually.[20] Opposer's SCHICK brand has the second largest market share for razors and shaving-related products in the United States.[21] From 2001 to 2007, opposer has spent over $300 million advertising its goods under its SCHICK mark, including over $75 million for advertising its disposable razors.[22] Opposer has advertised and promoted its goods under the SCHICK mark in national magazines and periodicals such as USA Today, TV Guide, Us Weekly, Seventeen, People, Glamour, Cosmopolitan, Sports Illustrated, Rolling Stone, Allure, ESPN Magazine, and Maxim;[23] and through radio and television advertisements on such national and cable networks as ABC, NBC, CBS, FOX, ESPN, CMT, Comedy Central, FX, MTV, TBS, TNT, TOON, USA, VH1, and Sci Fi.[24]

---

[17] Changar Declaration, Exhibit 19; Mekhail Declaration, Exhibit 1.
[18] Mekhail Declaration, p. 10.
[19] Id. at 9, Exhibit 13; Supplemental Mekhail Declaration p. 2, Exhibit 36.
[20] Id. at 3, 9, Exhibit 4.
[21] Id. at 9.
[22] Id. at 4, Exhibit 4.
[23] Id. at 5, Exhibit 17.
[24] Id. at 6, Exhibits 6-7.

Opposer also sponsors numerous sporting events and professional athletes, including the Summer and Winter X Games from 2004-2008, LPGA events in 2006, Big 10 Athletic Conference events in 2007, as well as professional beach volleyball events.[25] Such events prominently display the SCHICK mark, and often feature promotional booths and give-aways featuring SCHICK razor products.[26]

Accordingly, we find that the evidence establishes that opposer's SCHICK mark is famous for purposes of our likelihood of confusion determination, and, as indicated above, this factor weighs heavily in opposer's favor.

The Marks

We turn our attention to a comparison of the marks. In determining the similarity or dissimilarity of the marks, we must compare the marks in their entireties as to appearance, sound, meaning and commercial impression. See Palm Bay Imports, supra. The test is not whether the famous mark SCHICK and the mark SLICK ULTRA PLUS can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in their entireties that confusion as to the source of the goods offered under the respective marks is likely to result. Because the involved goods would be marketed to the general

---

[25] Id. at 6-8, Exhibits 8-11.
[26] Id.

16

public, our focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks.  See Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106 (TTAB 1975).  Further, when applicant's mark would appear, as it does here, on goods that are identical in part to goods identified under opposer's famous mark, the degree of similarity between the marks necessary to support a finding of likely confusion declines.  See Century 21 Real Estate v. Century Life, 970 F.2d 874, 23 USPQ2d 1698 (Fed. Cir. 1992).

In comparing the marks, we find that SLICK is the dominant element of applicant's mark.  Applicant admits this:  "'SLICK' dominates ULTRA and PLUS in Applicant's mark."[27]  Accordingly it is entitled to more weight in our analysis.  It is a well-established principle that, in articulating reasons for reaching a conclusion on the issue of likelihood of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on a consideration of the marks in their entireties.  See In re National Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

Furthermore, applicant has introduced evidence in the form of use-based, third-party registrations and

---

[27] Brief, p. 9.

advertisements from commercial Internet websites showing various marks for shaving products that include the term PLUS. These third-party registrations and uses include: ATRA PLUS (Registration No. 1491967 issued to Gillette Co. for razors and razor blades) and Internet advertisements for such goods under this mark at drugstore.com;[28] CUSTOMPLUS (Registration No. 1865174 issued to Gillette Co. for razors) and Internet advertisements for such goods under this mark at americarx.com;[29] PERSONNA II PLUS (Registration No. 1536107 issued to American Safety Razor Co. for razor blades) and Internet advertisements for such goods under this mark at shavesite.com;[30] LADY PERSONNA PLUS (Registration No. 1538951 issued to American Safety Razor Co. for disposable razors) and Internet advertisements for such goods under this mark at ebay.com;[31] and Internet advertisements for shaving cream under the mark ULLTRA.[32] The third-party registrations showing that different companies have adopted marks that include PLUS indicate PLUS has a significance for razors and razor blades, while the advertisements indicate that the marks are in use and that

---

[28] Lauson Declaration, Exhibit G.
[29] Id.
[30] Id.
[31] Id.
[32] Id.

18

consumers are accustomed to encountering the term PLUS as applied to razors and other shaving products.[33]

Similarly, the word ULTRA is defined as "going beyond what is usual or ordinary; excessive; extreme."[34] This definition shows that, as applied to applicant's goods, ULTRA has a laudatory meaning indicating disposable razors of a very high level of quality.

As a result, the terms ULTRA and PLUS are highly suggestive and therefore consumers are likely to view them as having less source-identifying significance than SLICK or, put another way, they will look to SLICK as the element of the mark with the most source-identifying significance.

In addition, SLICK is the first word in applicant's mark. See Presto Products, Inc. v. Nice-Pak Products Inc., 9 USPQ2d 1895, 1897 (TTAB 1988)("…[it is] a matter of some importance since it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered."). This is particularly true in the present

---

[33] Third-party registrations can be used in the manner of dictionary definitions to illustrate how the term is perceived in the trade or industry. *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987) ("[T]hird party registrations are of use only if they tend to demonstrate that a mark or a portion thereof is suggestive or descriptive of certain goods and hence is entitled to a narrow scope of protection. Used in this proper, limited manner, 'third party registrations are similar to dictionaries showing how language is generally used.' 1 McCarthy, Trademarks and Unfair Competition, § 11:26 at p. 516 (2d ed. 1984)").
[34] Random House Dictionary, Random House, Inc. (2009).

case, given the highly suggestive nature of the words ULTRA and PLUS.

In light of the foregoing, we find that SLICK is the dominant portion of applicant's SLICK ULTRA PLUS mark. This term is highly similar in appearance to opposer's famous SCHICK mark. Both of these words begin with the letter "S" and end with "ICK." Although the interior letters "CH" and "L" are different, these differences are not likely to be noticed by consumers who may purchase razor blades, an inexpensive item, without great care, and who, because of their familiarity with the famous SCHICK mark, are likely to "misread" SLICK in a quick glance at the mark. Because of the highly similar nature of the first word of applicant's mark and the entirety of opposer's famous mark, the similarities in appearance between SCHICK and SLICK ULTRA PLUS outweigh the differences. As noted above, the terms ULTRA and PLUS have less source-identifying significance than SLICK and, as a result, contribute less to the visual impression of the mark.[35]

---

[35] We note in addition that although opposer failed to prove its claim of a family of SCHICK marks, as discussed above, it has pleaded and proven ownership of numerous registrations that include the suggestive terms ULTRA or PLUS. Thus, the presence of these terms in applicant's mark may reinforce a connection with opposer's marks, rather than distinguishing them. Cf. Schering-Plough Healthcare Products, Inc. v. Ing-Jing Huang, 84 USPQ2d 1323 (TTAB 2007) (opposer met difficult burden of showing it routinely made combined use of "Dr. Scholl's" and "Air-Pillo" such that the two marks came to be associated together as indicators of origin in the mind of the buying public).

As to sound, it is settled that there is no correct way to pronounce a trademark that is not a recognized English word, as is the case with opposer's mark SCHICK. See In re Belgrade Shoe, 411 F.2d 1352, 162 USPQ 227 (CCPA 1969) and Interlego AG v. Abrams/Gentile Entertainment Inc., 63 USPQ2d 1862 (TTAB 2002). See also In re Microsoft Corp., 68 USPQ2d 1195 (TTAB 2003) (it is not possible to control how consumers will vocalize marks). However, it certainly is reasonable to pronounce SCHICK in a very similar manner to SLICK. As such, there are strong similarities in the pronunciation of SCHICK and SLICK, while the aural dissimilarity caused by the inclusion of the suggestive wording ULTRA PLUS in applicant's mark is not, for the reasons we have previously discussed, sufficient to distinguish the marks. Thus, when taken as a whole, the marks SCHICK and SLICK ULTRA PLUS are similar in sound.

As for the connotations of the marks, they are dissimilar. Opposer's mark appears to have originally been the surname of the inventor of the safety razor,[36] although it is not clear to what extent consumers are aware of this or that SCHICK presently is recognized as such. To those not familiar with the historical significance of SCHICK, the mark would appear to be an invented word, perhaps meant to be an onomatopoeic term, while applicant's mark is composed

---

[36] Mekhail Declaration, Exhibit 1.

21

of recognized English words that, as combined, suggest a superlative degree of smoothness.  However, similarity in any one of the elements of sound, appearance or meaning is sufficient to support a determination of likelihood of confusion.  See Krim-Ko Corp. v. The Coca-Cola Co., 390 F.2d 728, 156 USPQ 523, 526 (CCPA 1968) ("It is sufficient if the similarity in either form, spelling or sound alone is likely to cause confusion") and In re White Swan Ltd., 8 USPQ2d 1534, 1535 (TTAB 1988) ("In appropriate cases, a finding of similarity as to any one factor (sight, sound or meaning) alone 'may be sufficient to support a holding that the marks are confusingly similar'") (citations omitted)).  Therefore, although the marks have different meanings, this does not mandate a finding that there can be no likelihood of confusion, given the similarities in appearance and sound between applicant's SLICK ULTRA PLUS mark and opposer's famous SCHICK mark.

We find that the similarities in appearance and sound between the marks outweigh their differences in meaning.  In particular, because the goods are likely to be purchased as "off-the-shelf" items, the similarity in appearance of the marks plays a greater role than the differences in connotation.  This is particularly true because the goods are not only identical, but are likely to be purchased without great care.  In view of the fact that opposer's mark

22

is famous, consumers are likely to "see" the word SLICK in applicant's mark as SCHICK, and therefore not recognize the differences in connotation. (As previously discussed, the additional words ULTRA PLUS do not serve to distinguish the marks.) Overall, the marks convey similar commercial impressions, and this du Pont factor also favors opposer.

Finally, we note applicant's argument that the marks are dissimilar as they are actually used by the parties.[37] However, both opposer's registered SCHICK mark and the mark applicant seeks to register are shown in their applications for registration in typed or standard character form, with neither party making a trademark claim to any special form of display of its respective word mark. Therefore, the manner in which the opposer and applicant are now displaying their word marks on packaging and advertisements for their goods is of no consequence in our determination of the likelihood of confusion inasmuch as it is only the words that are being claimed as trademarks, while the current manner of display of those word marks is subject to change at any time. See Phillips Petroleum v. C.J. Webb, 442 F.2d 1376, 170 USPQ 35, 36 (CCPA 1971). See also Cunningham v. Laser Golf Corp., 222 F.3d 943, 55 USPQ2d 1842, 1847-48 (Fed. Cir. 2000).

---

[37] Brief, p. 9-11.

### Summary

We have carefully considered all of the evidence pertaining to the relevant du Pont factors, as well as all of the parties' arguments with respect thereto, including any evidence and arguments not specifically discussed in this opinion.[38]

We conclude that opposer has established its standing to bring this proceeding; its priority of use; and that a likelihood of confusion exists between its famous SCHICK mark and applicant's SLICK ULTRA PLUS mark, as used in connection with goods that are, in part, identical. To the extent that any of applicant's points raise a doubt about our conclusion, such doubt must be resolved in favor of the prior user and against the newcomer. See San Fernando Mfg. Co. v. JFD Electronics Components Corp., 565 F.2d 683, 196 USPQ 1, 2 (CCPA 1977).

DECISION: The opposition is sustained, and registration to applicant is refused.

---

[38] We note in that regard that applicant has made of record the determination of the Australian Trademark Office in an opposition brought by opposer's predecessor in interest against a third party's registration of the mark SLICK SHAVERS AS CLOSE AS YOU CAN GET in stylized form. Although we have considered this evidence, it is well settled that the findings of a foreign tribunal are not relevant to the issues in a proceeding concerning the right to register a trademark in the United States. See, e.g., Societe Civile Des Domaines Dourthe Freres v. S.A. Consortium Vinicole De Bordeaux Et De La Gironde, 6 USPQ2d 1205, 1207 n. 6 (TTAB 1988).